**John Fount MAY, Jr., Petitioner,**

v.

**The PEOPLE of the State of Colorado, Respondent.**

**No. 80 SC 77.**

Supreme Court of Colorado, En Banc.

Sept. 21, 1981.

---

Charles T. Flett, Arvada, for petitioner.

Stuart A. VanMeveren, Dist. Atty., Loren B. Schall, Asst. Dist. Atty., Cristine A. Loucks, Deputy Dist. Atty., Fort Collins, for respondent.

DUBOFSKY, Justice.

The defendant, John Fount May, Jr., appeals his conviction in county court, affirmed by the district court, for aiding and abetting a juvenile [1] in door-to-door sales solicitation in violation of several sections of the Fort Collins Code commonly described as the City's "Green River" ordinance (ordinance).[2] Because we find that the ordinance violated by the defendant does not unconstitutionally restrict commercial speech, we affirm the defendant's conviction.

On December 3, 1977, a Fort Collins police officer issued the defendant a summons for violation of the ordinance. The defendant, an employee of Rocky Mountain Youth, had brought a group of juveniles from Denver to Fort Collins to sell on consignment candy manufactured in Sante Fe Springs, California. The defendant stipulated that his co-defendant, Kennon Burnett Robertson,[3] instructed the juveniles to go from door-to-door in a residential area of Fort Collins to make a sales pitch for the candy. Because the juveniles complied with Robertson's instructions, the stipulation admitted that the defendant would be guilty of complicity in an offense if the court were to find that the facts constituted a violation of the ordinance. The defendant called several witnesses in the county court proceedings to testify that the ordinance was not enforced against the Girl Scouts or the Camp-Fire Girls who sold cookies or candy door-to-door.

Section 73–32 of the Fort Collins Code provides:

"The practice of going in and upon private residences, streets, public buildings and offices in the City of Fort Collins, Colorado, by solicitors, peddlers, hawkers, itinerant merchants and transient vendors of goods, wares and merchandise, services, books, pictures and periodicals, not having been requested or invited to do so by the owner or owners, occupant or occupants of said private residences, streets, public buildings or offices, for the purpose of soliciting orders for the sale of goods, wares and merchandise, services or books, pictures or periodicals, or for the purpose of disposing of or peddling or hawking the same, is hereby declared to be a nuisance and to be unlawful."

Section 73–33 of the Code provides:

"Any attempt to obtain an invitation to visit such private residences, public buildings and offices by personal solicitations or promise of any demonstrations, pecuniary benefit, advantage or any gift shall be deemed a violation of the terms and provisions of this Article."[4]

Violation of this ordinance is an unclassified misdemeanor. On June 30, 1978, the county court denied the defendant's motion to dismiss and, on July 28, 1978, found the defendant guilty of violating the ordinance and fined him $100.00. The defendant appealed his conviction to the district court which, on January 28, 1980, ruled that the

---

1. Proceedings concerning an adult who is alleged to have aided a child in violating a municipal ordinance may be commenced in county court by the issuance of a summons and complaint. Section 19–3–119(1), C.R.S. 1973 (1978 Repl.Vol. 8); section 19–1–104(2), C.R.S. 1973 (1978 Repl.Vol. 8); C.R.J.P. 1; C.R.Crim.P. 4.1.

2. Green River ordinances are modeled on an ordinance adopted in 1931 by the Town of Green River, Wyoming, forbidding house-to-house canvassing for sales. *See Breard v. Alexandria,* 341 U.S. 622, 71 S.Ct. 920, 95 L.Ed. 1233 (1951). The Fort Collins ordinance is similar to the original Green River ordinance.

3. As part of the stipulation, the prosecution dismissed the charge against Robertson.

4. In other sections, the Code authorizes a person hawking or peddling goods, wares or merchandise, other than door-to-door, to obtain a license by making application to the Director of Finance and paying a specified fee.

Fort Collins ordinance merely regulated the place and manner of certain sales activities. Because the ordinance did not completely prohibit sales, the district judge concluded that it was an appropriate constraint on direct solicitation sales, promoting valid governmental interests in protecting individual privacy and preserving the public peace, order and dignity. The district court affirmed the defendant's conviction.

On appeal to this Court, the defendant contends that the ordinance abridges the freedom of speech guaranteed by the First Amendment of the United States Constitution; that the ordinance is facially overbroad; that the ordinance prohibits legitimate business interests in violation of *Colo. Const.* Art. II, Sec. 3; [5] and that the ordinance conflicts with the Commerce Clause of the United States Constitution, art. I, sec. 8, because it prohibits the solicitation of orders for goods which have been shipped in interstate commerce; and that the discriminatory enforcement of the ordinance against the defendant—but not against others engaged in door-to-door solicitation—denied him equal protection of the laws. *U.S. Const.* amend. XIV. We disagree.

We conclude first that the ordinance, construed narrowly to apply only to commercial speech,[6] is a legitimate time, place and manner regulation of commercial speech. We find no evidence in the record to support the defendant's contention that the ordinance, as we construe it, is enforced in a manner to deny him equal protection of the laws. The ordinance does not prohibit legitimate business interests nor does it unconstitutionally interfere with interstate commerce.

I.

▮ Although the defendant acknowledges that, as applied to his conduct in this case, the ordinance prohibits only purely commercial speech, he asks us to invalidate the ordinance on its face because it also authorizes Fort Collins to ban non-commercial door-to-door solicitation. Generally, a party has standing to question an ordinance only if he has suffered "injury in fact to a legally protected interest as contemplated by statutory or constitutional provisions." *Wimberly v. Ettenberg*, 194 Colo. 163, 168, 570 P.2d 535, 539 (1977). An exception to the *Wimberly* rule is recognized in First Amendment cases where the rules of standing are broadened to permit a party to assert the facial unconstitutionality of a statute which may chill the protected expression of third persons, even though the statute could be constitutionally applied to the party before the court. *Marco Lounge, Inc. v. City of Federal Heights*, Colo., 625 P.2d 982 (1981).

The United States Supreme Court has held that the First Amendment overbreadth doctrine may not be invoked to invalidate a statute which threatens to deter *only* commercial speech. *Bates v. State Bar of Arizona*, 433 U.S. 350, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977). However, the *Bates* rule does not prevent a litigant with a commercial interest in speech from challenging the facial validity of a statute on the grounds that it may substantially infringe the protected, non-commercial speech of others. *Metromedia, Inc. v. City of San Diego*, —— U.S. ——, 101 S.Ct. 2882, 69 L.Ed.2d 2882 (1981).

▮ Overbreadth claims may be entertained where statutes purport to regulate the time, place, and manner of expressive or communicative conduct. *Broadrick v. Oklahoma*, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973); *Grayned v. City of Rockford*, 408 U.S 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972), but facial overbreadth has rarely been found when a suitable limit-

---

**5.** *Colo.Const.* Art. II, Sec. 3 provides:

"All persons have certain natural, essential and inalienable rights, among which may be reckoned the right of enjoying and defending their lives and liberties; of acquiring, possessing and protecting property; and of seeking and obtaining their safety and happiness."

**6.** Commercial speech is "speech proposing a commercial transaction." *Central Hudson Gas v. Public Service Commission*, 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980); *Ohralik v. Ohio State Bar Association*, 436 U.S. 447, 98 S.Ct. 1912, 56 L.Ed.2d 444 (1978).

ing construction has been or could be placed on the challenged statute. *Broadrick v. Oklahoma, supra; Marco Lounge, Inc. v. City of Federal Heights, supra.* Where conduct and not merely speech is involved, the overbreadth of a statute must be both real and substantial. *Broadrick v. Oklahoma, supra.* If a statute is not substantially overbroad, "whatever overbreadth may exist should be cured through case-by-case analysis of the fact situations to which it sanctions, assertedly, may not be applied." *Id.* 413 U.S. at 615–616, 93 S.Ct. at 2917, 37 L.Ed.2d at 842. Here we construe the ordinance to apply only to commercial speech, and thus, conclude that it is not substantially overbroad.

■ It has been recognized for more than forty years that door-to-door solicitation ordinances may not ban non-commercial speech. *Schaumburg v. Citizens for a Better Environment,* 444 U.S. 620, 100 S.Ct. 826, 63 L.Ed.2d 73 (1980); *Hynes v. Mayor of Oradell,* 425 U.S. 610, 96 S.Ct. 1755, 48 L.Ed.2d 243 (1976); *Martin v. Struthers,* 319 U.S. 141, 63 S.Ct. 862, 87 L.Ed. 1313 (1943); *Schneider v. State,* 308 U.S. 147, 60 S.Ct. 146, 84 L.Ed. 155 (1939).[7] Section 73–32 of the ordinance, most recently amended in 1965, is couched in terms which imply its application to purveyors of commercial goods: peddlers, hawkers, itinerant merchants and transient vendors.[8] That it is intended to apply only to commercial solicitation is confirmed by trial testimony elicited by the defendant that charitable organizations such as the Camp-Fire Girls and Girl Scouts sell or solicit orders for candy and cookies door-to-door unhindered in Fort Collins. Because the ordinance has not deterred and is unlikely to deter protected, non-commercial activities, whatever overbreadth may exist can be cured

through case-by-case adjudication. The defendant's facial overbreadth claim is therefore dismissed for want of standing. *See Parrack v. Town of Estes Park,* Colo., 628 P.2d 1014 (1981); *Williams v. City and County of Denver,* Colo., 622 P.2d 542 (1981).

## II.

■ Charitable solicitations in residential neighborhoods, on the street or door-to-door, involve a variety of speech interests—communication of information, the dissemination and propagation of views and ideas, and the advocacy of causes—protected by the First Amendment. *Schaumburg v. Citizens for a Better Environment, supra; Hynes v. Mayor of Oradell, supra; Thomas v. Collins,* 323 U.S. 516, 65 S.Ct. 315, 89 L.Ed. 430 (1945); *Murdock v. Pennsylvania,* 319 U.S. 105, 63 S.Ct. 870, 87 L.Ed. 1292 (1943); *Martin v. Struthers, supra; Jamison v. Texas,* 318 U.S. 413, 63 S.Ct. 669, 87 L.Ed. 869 (1943); *Schneider v. State, supra; Cantwell v. Connecticut,* 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940). However, it is settled that a municipality has the power to protect its citizens from crime and undue annoyance by regulating charitable soliciting and canvassing in accordance with a narrowly drawn ordinance that "does not vest in municipal officials the undefined power to determine what messages residents will hear." *Hynes v. Mayor of Oradell,* 425 U.S. at 617, 96 S.Ct. at 1759, 48 L.Ed.2d at 251.

Commercial solicitation in residential neighborhoods on the other hand has not received similar protection. The United States Supreme Court distinguished *Martin v. Struthers, supra,* when it upheld a Green River Ordinance banning door-to-door commercial solicitation in *Breard v. Alexandria,*

---

7. "[B]ecause charitable solicitation does more than inform private economic decisions and is not primarily concerned with providing information about the characteristics and costs of goods and services, it has not been dealt with in our cases as a variety of purely commercial speech." *Schaumburg v. Citizens for a Better Environment, supra,* 444 U.S. at 632, 100 S.Ct. at 834, 63 L.Ed.2d at 84–85.

8. We have a duty to construe an ambiguous ordinance consistently with the Constitution whenever such construction is reasonable and practical. *Colfax Unlimited Association v. City of Lakewood,* Colo., 634 P.2d 52 (1981); *People v. Roybal,* Colo., 618 P.2d 1121 (1980); *Colorado State Board of Medical Examiners v. Jorgensen,* 198 Colo. 275, 599 P.2d 869 (1979).

*supra.* The *Breard* decision reflected the view, first espoused in *Valentine v. Chrestensen,* 316 U.S. 52, 62 S.Ct. 920, 86 L.Ed. 1262 (1942), that the First Amendment did not protect commercial speech. This narrow conception of the First Amendment was subsequently rejected by the Court in *Bigelow v. Virginia,* 421 U.S. 809, 95 S.Ct. 2222, 44 L.Ed.2d 600 (1975), and *Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council,* 425 U.S. 748, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976),[9] which extended constitutional protection to commercial speech.

The Court's new solicitude for commercial speech is predicated on "society's interest ... in assuring the free flow of commercial information." *Ohralik v. Ohio State Bar Association,* 436 U.S. at 454, 98 S.Ct. at 1918, 56 L.Ed.2d at 452. *Bates v. State Bar of Arizona,* 433 U.S. at 384, 97 S.Ct. at 2709, 53 L.Ed.2d at 836; *Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council,*[10] *supra. See also Linmark Associates v. Township of Willingboro,* 431 U.S. 85, 97 S.Ct. 1614, 52 L.Ed.2d 155 (1977); *U. S. Postal Service v. Greenburgh Civic Association,* — U.S. —, 101 S.Ct. 2676, 69 L.Ed.2d 517 (1981) (Stevens, J., dissenting; Marshall, J., dissenting).

Although the First Amendment premise of *Breard* has been abandoned, *Metromedia, Inc. v. City of San Diego, supra; Schaumburg v. Citizens for a Better Environment,*

*supra;*[11] *Ohralik v. Ohio State Bar Association, supra,* the United States Supreme Court has not yet specifically reconsidered the constitutionality of ordinances banning door-to-door, purely commercial solicitation. There are intimations by the Court that *Breard* retains a measure of vitality. *Hynes v. Mayor of Oradell, supra. Schaumburg v. Citizens for a Better Environment, supra.* (Rehnquist, J., dissenting: "Today's opinion strongly, and I believe correctly, implies that the result here [invalidating an ordinance restricting door-to-door charitable solicitation for funds to organizations which spent less than 25% of the funds solicited on the solicitation itself] would be otherwise if [the solicitor's] primary objective were to provide 'information about the characteristics and costs of goods and services'" rather than to "advocate positions on matters of public concern." 444 U.S. at 642, 100 S.Ct. at 83, 63 L.Ed.2d at 91.)

### III.

Although commercial speech is entitled to First Amendment protection, the Court has recognized the "commonsense" distinction between "speech proposing a commercial transaction, which occurs in an area traditionally subject to government regulation, and other varieties of speech." *Central Hudson Gas v. Public Service Commission,* 447 U.S. at 562, 100 S.Ct. at 2349, 65 L.Ed.2d at 348.[12] The distinction allows

**9.** Rather than distinguishing between elements of commercial speech and political speech in *Bigelow v. Virginia, supra,* and *Virginia State Board of Pharmacy, supra,* the Court "elected to scrap the whole commercial speech doctrine" which denied First Amendment protection to commercial speech. Emerson, *First Amendment Doctrine and the Burger Court,* 68 *Cal.L.Rev.* 422 at 459 (1980).

**10.** "As to the particular consumer's interest in the free flow of commercial information, that interest may be as keen, if not keener by far, than his interest in the day's most urgent political debate .... So long as we preserve a predominantly free enterprise economy, the allocation of our resources in large measure will be made through numerous private economic decisions. It is a matter of public interest that those decisions, in the aggregate, be intelligent and well informed. To this end, the free flow of commercial information is indispensable."

*Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council,* 425 U.S. at 763 and 765, 96 S.Ct. at 1826 and 1827, 48 L.Ed.2d at 359 and 360.

**11.** "To the extent that any of the Court's past decisions [*Breard v. Alexandria, supra*] hold or indicate that commercial speech is excluded from First Amendment protections, those decisions, to *that* extent, are no longer good law." *Schaumburg v. Citizens for a Better Environment,* 444 U.S. at 632 n.7, 100 S.Ct. at 826, 63 L.Ed.2d at 85 (emphasis added).

**12.** "Commonsense" differences between commercial speech and other varieties include the easier verification of the truth of commercial speech by its disseminator and the durability of commercial speech: "there is little likelihood of its being chilled by proper regulation and forgone entirely." *Virginia State Board of Phar-*

more extensive regulation of commercial speech than of non-commercial speech because

> "[t]o require a parity of constitutional protection for commercial and noncommercial speech alike could invite dilution simply by a leveling process, of the force of the Amendment's guarantee with respect to the latter kind of speech. Rather than subject the First Amendment to such a devitalization, we instead have afforded commercial speech a limited measure of protection, commensurate with its subordinate position in the scale of First Amendment values, while allowing modes of regulation that might be impermissible in the realm of noncommercial expression."

*Ohralik v. Ohio State Bar Association,* 436 U.S. at 456, 98 S.Ct. at 1918, 56 L.Ed.2d at 453.

An ordinance regulating commercial speech must satisfy a four-part test:

> "At the outset, we must determine whether the expression is protected by the First Amendment. For commercial speech to come within that provision, it at least must concern lawful activity and not be misleading. Next, we ask whether the asserted governmental interest is substantial. If both inquiries yield positive answers, we must determine whether the regulation directly advances the governmental interest asserted, and whether it is not more extensive than is necessary to serve that interest."

*Central Hudson Gas v. Public Service Commission,* 447 U.S. at 566, 100 S.Ct. at 2351, 65 L.Ed.2d at 351. *Metromedia, Inc. v. City of San Diego, supra.* Therefore, we must apply the *Central Hudson* criteria to the Fort Collins ordinance.

The commercial speech interests in the door-to-door sale of candy are protected by the First Amendment, the sale of candy is a lawful activity, and there is no indication in the record that the juvenile agents of the

defendant or the defendant misled anyone about their purposes in selling candy or about the merits of the product. The district court upheld the ordinance banning door-to-door candy sales because the ordinance furthered valid governmental interests of protecting an individual's right to privacy and preserving the public peace, order and dignity. These asserted goals—privacy and safety—are substantial governmental goals. *Schaumburg v. Citizens for a Better Environment, supra; Hynes v. Mayor of Oradell, supra; Village of Belle Terre v. Boraas,* 416 U.S. 1, 94 S.Ct. 1536, 39 L.Ed.2d 797 (1973); *Breard v. Alexandria, supra; Martin v. Struthers, supra.*

The significant questions before us under the *Central Hudson* criteria are whether the ordinance "directly advances" governmental interests in privacy and safety and whether the ordinance is broader than necessary.

> "[O]nce a governmental regulation is shown to impinge upon basic First Amendment rights, the burden falls on the government to show the validity of its asserted interest and the absence of less intrusive alternatives. *See, e. g., Schneider v. State, supra.*"

*Heffron v. International Society for Krishna Consciousness, Inc.,* —— U.S. ——, 101 S.Ct. 2559, 69 L.Ed.2d 298 (1981) (Brennan, J., dissenting).

 A municipality has the power to protect its citizens from crime and undue annoyance by regulating door-to-door solicitation. *Hynes v. Mayor of Oradell, supra.* There is "no absolute right under the Federal Constitution to enter on the private premises of another and knock on a door for any purpose." *Id.,* 425 U.S. at 619, 96 S.Ct. at 1760, 48 L.Ed.2d at 252. The police power may be deployed to protect the "blessings of quiet seclusion." *Village of Belle Terre v. Boraas,* 416 U.S. at 9, 94 S.Ct.

---

*macy v. Virginia Citizens Consumer Council,* 425 U.S. at 772 n.24, 96 S.Ct. at 1830, 48 L.Ed.2d at 364. The Court also observed in *Virginia State Board of Pharmacy* that the

"greater objectivity and hardiness of commercial speech" may "make inapplicable the prohibition against prior restraints." *Id.*

at 1541, 39 L.Ed.2d at 804.[13] Door-to-door ordinances

> " 'may be aimed at the protection of the householders from annoyance, including intrusion upon the hours of rest, and at the prevention of crime. Constant callers, whether selling pots or distributing leaflets, may lessen the peaceful enjoyment of a home.... In addition, burglars frequently pose as canvassers, either in order that they may have a pretense to discover whether a house is empty and hence ripe for burglary, or for the purpose of spying out the premises in order that they may return later. Crime prevention may thus be the purpose of regulatory ordinances.' [*Martin v. Struthers*, 319 U.S. at 144, 63 S.Ct. at 864, 87 L.Ed. at 1317.]"

*Hynes v. Mayor of Oradell*, 425 U.S. at 618, 96 S.Ct. at 1759, 48 L.Ed.2d at 251–52. Moreover, in-person solicitation exerts pressure and often demands an immediate response, without providing an opportunity for comparison or reflection. *Ohralik v. Ohio State Bar Association, supra.*[14] The target of the solicitation may have difficulty avoiding being importuned and distressed. *Id.; Breard v. Alexandria, supra.* Therefore, we conclude that the Fort Collins ordinance meets the third of the *Central Hudson* criteria: it directly advances governmental interests in maintaining a homeowner's privacy and in public safety.

The more difficult question is whether the ordinance meets the First Amendment mandate that restrictions on the time, place, and manner of speech be narrowly drawn. *Schaumburg v. Citizens for a Better Environment, supra; Grayned v. City of Rockford*, 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972); *Niemotko v. Maryland*, 340 U.S. 268, 71 S.Ct. 325, 95 L.Ed. 267 (1951); *Martin v. Struthers, supra.* Both legitimate state interests, in privacy and in safety, can be furthered by an ordinance punishing trespass after warning. A sign posted by a householder warning solicitors and peddlers not to trespass is a less intrusive means than an outright ban on solicitation to protect privacy. *Schaumburg v. Citizens for a Better Environment, supra*[15]; *Martin v. Struthers, supra; Weissman v. City of Alamogordo*, 472 F.Supp. 425 (D.C. N.M.1979). Another narrow means of advancing municipal crime prevention goals is a permit system which "does not vest in municipal officials the undefined power to determine what messages residents will hear," *Hynes v. Mayor of Oradell*, 425 U.S. at 617, 96 S.Ct. at 1759, 48 L.Ed.2d at 251.[16]

---

**13.** The right to be let alone arises in a variety of contexts. *See* Tribe, *American Constitutional Law*, ch. 15 (1978). The privacy interests of unwilling listeners are strongest in the home. *Cohen v. California*, 403 U.S. 15, 91 S.Ct. 1780, 29 L.Ed.2d 284 (1971); *Organization for a Better Austin v. Keefe*, 402 U.S. 415, 91 S.Ct. 1575, 29 L.Ed.2d 1 (1971); *Rowan v. Post Office Department*, 397 U.S. 728, 90 S.Ct. 1484, 25 L.Ed.2d 736 (1970).

**14.** In *Schaumburg*, the Court compared charitable solicitation to the situation in *Ohralik* where the court upheld disciplinary action against an attorney who solicited accident victims for the purpose of obtaining remunerative employment and found that charitable solicitation was not so inherently conducive to fraud and overreaching as to justify the prohibition. *Schaumburg v. Citizens for a Better Environment*, 444 U.S. at 637–38 n.11, 100 S.Ct. at 836–37, 63 L.Ed.2d at 88.

**15.** The ordinance in *Schaumberg* permitted homeowners to bar solicitors from their property by posting "No Trespassing" signs. It also allowed commercial door-to-door solicitation by peddlers with a license.

**16.** The Court invalidated the door-to-door solicitation ordinance in *Hynes* because it vested in municipal officials the undefined power to determine which *charitable* causes could solicit door-to-door. We realize that our narrowed construction of the Fort Collins ordinance empowers the City to determine what speech is *commercial* and therefore banned by the ordinance. In upholding a total ban on off-site billboard advertising, the United States Supreme Court impliedly acknowledged the discretion of city officials in San Diego to make the difficult distinction between commercial and non-commercial speech. *See Metromedia, Inc. v. City of San Diego, supra* (Brennan, J., concurring in the judgment). Any review of the exercise of Fort Collins officials' discretion in enforcing the ordinance must be done on a case-by-case basis, *see* Tribe, *American Constitutional Law, supra*, at 583. Because the defendant here concedes that his speech is purely commercial, the issue is not before us.

Although the municipality's concern with public safety could be promoted by a permit system like that which Fort Collins has enacted to regulate on-street vendors, the individual's interest in maintaining the privacy and solitude of his home is most directly and most effectively advanced by a total ban on door-to-door commercial solicitation. Notwithstanding the United States Supreme Court's holding in *Virginia State Board of Pharmacy, supra,* that a state could not *completely* suppress dissemination of concededly truthful information about entirely lawful activity, the Court has approved a total ban of a *means* of commercial communication. *See Central Hudson Gas v. Public Service Commission,* 477 U.S. at 576, 100 S.Ct. at 2356, 65 L.Ed.2d at 357 (Blackmun, J., concurring).[17] In *Metromedia, supra,* the Court upheld a total ban of off-site commercial billboards, relying on the *Central Hudson* test. *Metromedia, Inc. v. City of San Diego, supra* (*see* opinions of White, J., and Stevens, J.,—particularly the discussion of *Kovacs v. Cooper,* 336 U.S. 77, 69 S.Ct. 448, 93 L.Ed. 513 (1949), in the concurring portion of Justice Stevens' opinion).

▇▇▇ The permissibility of a total ban on commercial door-to-door solicitation is not necessarily entailed by the decision in *Metromedia* sustaining a ban on off-site commercial billboards. Each method of communicating ideas has become a law unto itself. *See Metromedia, Inc. v. City of San Diego, supra* (opinions of Brennan, J., and Stevens, J.); *Kovacs v. Cooper, supra.* Here, therefore, we are concerned with the law of door-to-door commercial solicitation. In *Hynes,* the Court noted the level of protection given door-to-door solicitation as a means of communication:

"Professor Zechariah Chafee articulated something of the householder's right to be let alone, saying:

'Of all the methods of spreading unpopular ideas, [house-to-house canvassing] seems the least entitled to extensive protection. The possibilities of persuasion are slight compared with the certainties of annoyance....' Free Speech in the United States 406 (1954)."

*Hynes v. Mayor of Oradell,* 425 U.S. at 619, 96 S.Ct. at 1760, 48 L.Ed.2d at 252; Chafee quoted also in *Breard v. Alexandria, supra.* Because the court has recently upheld a total ban on a means of communication and reiterated the *Breard* dictum that commercial speech on a householder's doorstep is not entitled to extensive First Amendment protection, we conclude that a total ban of commercial door-to-door solicitation is not *per se* impermissible.[18]

Finally, to determine whether the Fort Collins total ban on commercial door-to-door solicitation is a constitutionally valid regulation of a means of communication, we must strike a "balance" between the value of the medium of expression curtailed and Fort Collins' countervailing regulatory interest, guided by whatever unifying principles may be found in past decisions. Tribe, *American Constitutional Law, supra* at 582. *See Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council,* 425 U.S. at 789, 96 S.Ct. at 1839, 48 L.Ed.2d at 375 (Rehnquist, J., dissenting). To be weighed in the balance are, on the one hand, "the extent to which communicative activity is in fact inhibited," and, on the other hand, "the values, interests, or

17. *But see Schad v. Borough of Mount Ephraim,* —— U.S. ——, 101 S.Ct. 2176, 68 L.Ed.2d 671, (1981), where the United States Supreme Court invalidated a zoning ordinance under which live entertainment was not a permitted use in any establishment in the borough. *Schad* is distinguishable from the case before us. In *Schad,* the speaker's First Amendment interests were stronger—live entertainment is a "core" First Amendment activity; commercial speech is not. Also, the ban on sales solicitation arguably is not total. The ordinance pro-

hibits only face-to-face solicitation; direct mail and telephone sales are unaffected.

18. We do not construe the Fort Collins ordinance as a ban on other forms of commercial solicitation including telephone solicitation, handbill solicitation, mail solicitation, and in-person solicitation conducted in fora other than residential or office doorsteps. Trial testimony indicated that enforcement of the ordinance does not hinder such commercial solicitation.

rights served by enforcing the inhibition." Tribe, *American Constitutional Law, supra* at 683. The balancing test returns us to *Breard v. Alexandria,* in which the United States Supreme Court thirty years ago upheld a Green River Ordinance banning door-to-door commercial solicitation after "a balancing of the conveniences between some householders' desire for privacy and the publisher's right to distribute publications in the precise way that those soliciting for him think brings the best results." 341 U.S. at 644, 71 S.Ct. at 933, 95 L.Ed. at 1249.

■ When balanced against the substantial governmental interest in maintaining a householder's privacy and safety, we conclude that the ordinance is not more extensive than is necessary to serve the governmental interest asserted. *Central Hudson Gas v. Public Service Commission, supra.* Hence we sustain the ordinance as a constitutionally valid regulation of commercial speech.

### IV.

■ We briefly consider the other constitutional challenges raised by the defendant: that the ordinance prohibits legitimate business interests in violation of *Colo. Const.* Art. II, Sec. 3; that the ordinance violates the interstate commerce clause of the United States Constitution because it prohibits the solicitation of orders for goods which have been shipped in interstate commerce; and that the ordinance was enforced against the defendants and not against others engaged in door-to-door solicitation in a manner which denied the defendant equal protection of the laws. We reject each of these contentions.

In support of his assertion that the ordinance prohibits his legitimate business interest, the defendant cites *Combined Communications Corporation v. City and County of Denver,* 189 Colo. 462, 542 P.2d 79 (1975). *Combined Communications Corporation* invalidated a Denver ordinance prohibiting off-premises outdoor advertising. The

judgment in *Metromedia, Inc. v. City of San Diego, supra,* casts some doubt on the continuing validity of *Combined Communications.* Moreover, the Fort Collins ordinance does not prohibit the operation of a separate and distinct industry comparable to the off-premises outdoor advertising industry described in *Combined Communications.* Fort Collins does not prohibit the defendant from selling candy; he is prohibited only from going door-to-door, a method of selling the candy. We see no reason to depart from the earlier rulings of this Court and the United States Supreme Court that a Green River ordinance does not unconstitutionally prohibit legitimate business interests. *Breard v. Alexandria, supra; McCormick v. Montrose,* 105 Colo. 493, 99 P.2d 969 (1939).

■ Further, we see no reason to depart from the rulings in *Breard* and *McCormick* that a ban on commercial door-to-door solicitation does not violate the interstate commerce clause of the United States Constitution. *Breard v. Alexandria, supra; McCormick v. Montrose, supra.* Green River ordinances prohibit the commercial sale of goods door-to-door in a municipality irrespective of the goods' point of origin. The regulation of the purely local activity of selling goods is constitutional if it is applied to all commercial products regardless of source. *Wagner v. City of Covington,* 251 U.S. 95, 40 S.Ct. 93, 64 L.Ed. 157 (1919). *Town of Green River v. Fuller Brush Company,* 65 F.2d 112 (10th Cir. 1933).

■ Finally, the defendant contends that the ordinance has been enforced against him and not against others, and that such selective enforcement denies him equal protection of the laws. At trial, a Fort Collins police officer testified that the ordinance is enforced when the police receive a complaint about commercial door-to-door solicitation.[19] The fact that some people escape prosecution under a statute is not a denial of equal protection unless selec-

19. The officer also testified that to his knowledge, there had been no complaints about non-commercial solicitation.

tive enforcement of the statute is intentional or purposeful. *Yick Wo v. Hopkins*, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886). The determination to prosecute is within the district attorney's discretion. *People v. District Court*, Colo., 632 P.2d 1022 (1981). The defendant has not shown any purposeful discrimination or abuse of discretion by law enforcement officials in the enforcement of the ordinance. He has not been denied equal protection.

Judgment affirmed.