CITY OF ENGLEWOOD, Petitioner,

v.

John David HAMMES, Respondent.

No. 81SC267.

Supreme Court of Colorado,
En Banc.

Oct. 31, 1983.
Rehearing Denied Nov. 29, 1983.

Rick DeWitt, City Atty., City of Englewood, Loretta B. Huffine, Asst. City Atty., Englewood, for petitioner City of Englewood.

Mark Cameron Johnson, Allen J. Kincaid, Allen J. Kincaid & Associates, Brush, for respondent.

Max P. Zall, City Atty., City of Denver, Norman R. Bangeman, Lee G. Rallis, Howard E. Willner, Asst. City Attys., Denver, for amicus curiae City and County of Denver.

DUBOFSKY, Justice.

We granted certiorari to review the judgment of the Arapahoe County District Court reversing the municipal court conviction of the defendant, John Hammes, of "interfering with an officer" under City of Englewood (Englewood) Municipal Ordinance 11–6–15.[1] The district court determined that the ordinance was unconstitutional. We limit the ordinance to knowing conduct, and as limited, uphold it as constitutional. However, because there was no evidence that the defendant knowingly interfered with police officers, we affirm the result reached by the district court.

On February 15, 1980, an Englewood city grader was removing ice which had accumulated on West Grand Avenue over a long period of time. Ahead of the grader, two

---

1. City of Englewood Ordinance 11–6–15, at the time of the defendant's conviction, read:

It shall be unlawful for any person to resist any police officer, any member of the police department, or any person duly empowered with police authority, while in the discharge or apparent discharge of his duty, or *in any way to interfere with or hinder him in the discharge of his duty.*
(Emphasis added.)

Englewood police officers were impounding vehicles left on the street in violation of temporary signs restricting parking which had been put up by the street department the day before. The defendant's roommate was the owner of two vehicles parked on the street, and when the grader was ready to remove the ice in front of the defendant's apartment, the police officers, after noting the registered owner's name on the defendant's mailbox, told the defendant that if the vehicles were not moved they would be impounded.

The defendant called his roommate at work, informed him of the problem, and then went to his roommate's place of employment and brought him back to remove the vehicles. Meanwhile, the officers wrote up the impoundment and called tow trucks. The roommate, while waiting to be picked up, had called city offices and been told that an Englewood ordinance required posting of restricted parking for 48 hours before violators could be towed. Therefore, when the roommate arrived home he insisted that the police officers show him the local ordinance before he would move his vehicles. Because the grader and tow trucks were waiting, the officers informed him that he first must move his vehicles or they would be towed. The roommate replied that he would not move his vehicles and would not allow them to be impounded. When the officer told the roommate that he was under arrest, a physical altercation between the two officers and the roommate ensued.

The defendant, according to the testimony of the police officer, was advised by one of the officers to step back although the officer said the defendant had done nothing except be involved in the conversation, siding with the roommate. Both the defendant and the officer testified that the defendant did step back, and according to the defendant he went to the other side of his pickup truck while the officers and his roommate were wrestling on the curb-side of the truck. As other officers arrived, the two officers pushed the roommate to the ground, and the defendant came back around his truck to see what was happen-

ing. While the officers were trying to handcuff the roommate, the defendant approached close enough, according to the testimony of one officer, that the officer felt threatened. Because the defendant was yelling at the officers not to hurt the roommate the officer feared that the defendant was going to become involved in the altercation. The substance of the defendant's remarks was that "he [the roommate] had both hands behind his back already." The officer testified that the defendant was four to six inches away from him when he told him to get back or he would be arrested. The defendant testified that he did not approach the officer; instead, the officer approached him, and that he was not closer than eight feet to the fight. When the defendant ignored the officer's order to get back, the defendant was arrested.

The defendant was *pro se* at his trial in municipal court, and the municipal court judge, prefacing his remarks with "your state of mind might be material to the charge that is against you," asked questions in an attempt to elicit testimony about whether the defendant understood the problem with moving the vehicles and was trying to alleviate it, or trying to complicate it. In response, the defendant stated that it was apparent that the roommate only needed to move his vehicles, that he went to get his roommate to move the vehicles, that he also wanted to see the code, and that the whole thing became "quite ridiculous." He also testified that he never yelled or screamed and "was never even mad," but that he saw no reason to step back further than the other observers.

The municipal court found that the defendant did not intend to entirely prevent the officers from doing what they were doing, but ruled that when a fracas involves police officers, any interference with how the officers view their duty will sustain a conviction under the ordinance. The municipal court also observed that the defendant's motives "were not entirely bad." The municipal court fined the defendant $50.00 plus costs.

The defendant appealed to the Arapahoe County District Court which reversed, holding that the ordinance at issue was unconstitutionally vague and overbroad on its face, as well as unconstitutional as applied to the defendant's conduct, and that the evidence was insufficient to support the conviction. Englewood sought certiorari review.

## I.

The district court found the ordinance to be overbroad in that it did not limit its application to speech to "fighting words," citing, *Gooding v. Wilson,* 405 U.S. 518, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972), and *Chaplinsky v. New Hampshire,* 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942). *But see Colten v. Kentucky,* 407 U.S. 104, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972) (upholding a conviction for disorderly conduct where the defendant had intentionally caused inconvenience to police by refusing to move on and by using speech devoid of "fighting words"). The district court also found the terms "interfere with" and "hinder" to be vague and indefinite, and implied, in its reliance on *Landry v. Daley,* 280 F.Supp. 968 (N.D.Ill.1968), that the phrase "in the discharge of his duty" is unconstitutionally vague. The district court did not mention *People v. Del Toro,* 155 Colo. 487, 395 P.2d 357 (1964) in which this Court held that an identical Aurora ordinance was not vague or uncertain in meaning. *See generally Smith v. Goguen,* 415 U.S. 566, 581, 94 S.Ct. 1242, 1251, 39 L.Ed.2d 605 (1974) (The United States Supreme Court, in dicta, stated: "There are areas of human conduct where, by the nature of the problems presented, legislatures simply cannot establish standards with great precision. Control of the broad range of disorderly conduct that may inhibit a policeman in the performance of his official duties may be one such area, requiring as it does an on-the-spot assessment of the need to keep order.")

■ Before the constitutional issues in this case may be considered, we must re-solve the issue of the defendant's standing to raise them. Generally "[t]he proper inquiry on standing is whether the plaintiff has suffered injury in fact to a legally protected interest as contemplated by statutory or constitutional provisions." *Marco Lounge, Inc. v. City of Federal Heights,* 625 P.2d 982, 984 (Colo.1981); *Cloverleaf Kennel Club, Inc. v. Colorado Racing Commission,* 620 P.2d 1051, 1056 (Colo.1980); *Wimberly v. Ettenberg,* 194 Colo. 163, 168, 570 P.2d 535, 539 (1977). In First Amendment cases, however, the rules of standing are broadened to permit a party to assert the facial overbreadth of statutes or ordinances which may chill the constitutionally protected expression of third parties, regardless of whether the statute or ordinance could be applied constitutionally to the conduct of the party before the court. *May v. People,* 636 P.2d 672, 675 (Colo.1981); *Marco Lounge, Inc. v. City of Federal Heights, supra,* at 985. Where a statute purports to regulate conduct, rather than pure speech, however, the facial overbreadth exception to traditional rules of standing will be applied only when the overbreadth is real and substantial "judged in relation to the statute's plainly legitimate sweep." *Broadrick v. Oklahoma,* 413 U.S. 601, 615, 93 S.Ct. 2908, 2918, 37 L.Ed.2d 830 (1973); *May v. People, supra,* at 676. Moreover, facial overbreadth rarely will be found when a statute is susceptible to a suitably limiting construction. *May v. People, supra,* at 675–676; *Marco Lounge, Inc. v. City of Federal Heights, supra,* at 986.

■ The ordinance at issue purports to regulate conduct rather than pure speech. As interpreted by the district and municipal courts, it prohibits any interference with police officers whether through words or action. Because of the myriad of ways in which citizens, in the exercise of expressive or associational rights, might interfere unintentionally with police action,[2] the ordinance, as interpreted by the lower courts here, is capable of chilling the exercise of First Amendment rights. However, be-

---

**2.** For example, political demonstrators could unintentionally "interfere" with the normal flow of traffic, thereby interfering with police vehicles.

cause we find the ordinance to be susceptible to a limiting construction,[3] the ordinance is not substantially overbroad within the meaning of *Broadrick* and *May.* Therefore, we hold that the defendant lacks standing to raise the issue of facial overbreadth in this action.

Similarly, the defendant in this action lacks standing to raise the alleged vagueness of the ordinance except as it applies to his own conduct. The essence of a vagueness challenge is that the law "fails to reasonably forewarn persons of ordinary intelligence of what is prohibited ... and lends itself to arbitrary and discriminatory enforcement because it fails to provide explicit standards for those who apply it." *City of Lakewood v. Colfax Unlimited,* 634 P.2d 52, 59 (Colo.1981); *People in the Interest of C.M.,* 630 P.2d 593, 594–595 (Colo. 1981). A vague law does not provide courts and juries "adequate standards to enable them to apply the law consistently and in accord with legislative intent." *People v. Smith,* 638 P.2d 1, 3 (Colo.1981).

In the instant case, the language of the ordinance squarely covers conduct such as an attempt to physically prevent police officers from making a valid arrest. Where, as here, it cannot be alleged that the statute is vague on its face or "impermissibly vague in all of its applications," *Hoffman Estates v. Flipside,* 455 U.S. 489, 495, 102 S.Ct. 1186, 1191, 71 L.Ed.2d 362 (1982), the vagueness analysis is similar to overbreadth analysis; the focus, however, is shifted from the possible chilling effect on third parties to the risk of standardless enforcement. *See City of Lakewood v. Colfax Unlimited, supra,* at 60.

In the past, we have refused to relax traditional rules of standing in the context of a vagueness challenge absent an allegation that the statute is vague in all of its applications, since the doctrine is geared more to the protection of defendants from standardless or discriminatory enforcement than to the protection of hypothetical third

parties. *City of Lakewood v. Colfax Unlimited, supra,* at 60; *People v. Wimer,* 197 Colo. 191, 591 P.2d 87 (1979); *see Kolender v. Lawson,* —— U.S. ——, 103 S.Ct. 1855, 1865, 75 L.Ed.2d 903 (1983) (White, J., dissenting). However, where a vague statute abuts upon sensitive areas of First Amendment freedoms, it may operate to inhibit the exercise of those freedoms. *Grayned v. City of Rockford,* 408 U.S. 104, 109, 92 S.Ct. 2294, 2299, 33 L.Ed.2d 222 (1972); *People in the Interest of C.M., supra,* at 595. Recently, the United States Supreme Court indicated that standing rules for vagueness challenges must be relaxed, at least in criminal cases where the law reaches "a substantial amount of constitutionally protected conduct." *Kolender v. Lawson,* —— U.S. ——, 103 S.Ct. 1855, 1859 n. 8, 75 L.Ed.2d 903 (1983). Because vagueness, in this context, and overbreadth are "logically related and similar doctrines," *id.,* we may apply the reasoning of our overbreadth analysis. The ordinance at issue is susceptible to a narrowing construction which reduces the vagueness of its terms, *People v. Moyer,* 670 P.2d 785, 789 (Colo.1983); therefore, we hold that the ordinance is not substantially vague and that the defendant lacks standing to raise the issue of facial vagueness.

Our holding does not preclude the defendant from challenging the constitutionality of the ordinance as applied to his conduct. The district court held that the instant ordinance is unconstitutional as applied to the defendant. The court's holding implies that the defendant's conduct was constitutionally protected, or that the ordinance was not sufficiently precise to afford the defendant due process of law. Because we hold in Part II, *infra,* that the evidence in the record does not support the defendant's conviction under the ordinance, properly interpreted, we do not reach these constitutional issues.

---

**3.** *See* Part II of this opinion, *infra,* in which we hold that a violation of the ordinance requires proof that the defendant knowingly resisted, or interfered with, police officers.

## II.

The evidence before the municipal court was not sufficient to support the defendant's conviction of "resisting an officer" because the requisite *mens rea* was not proven. While the ordinance on its face does not specify *mens rea* as an element of the offense, we interpret the ordinance to require proof of a "knowing" mental state.[4]

Although "[t]he existence of a *mens rea* is the rule of, rather than the exception to, the principles of Anglo-American criminal jurisprudence," *United States v. United States Gypsum Co.,* 438 U.S. 422, 436, 98 S.Ct. 2864, 2873, 57 L.Ed.2d 854 (1978); *Dennis v. United States,* 341 U.S. 494, 500, 71 S.Ct. 857, 862, 95 L.Ed. 1137 (1951), strict liability crimes may nonetheless be created to "more effectively regulate activity in areas where an individual's act may have grave consequences upon the public at large or where the government may have particular problems of proof with respect to the intent element." *Bollier v. People,* 635 P.2d 543, 546 (Colo.1981); *see generally People v. Rostad,* 669 P.2d 126 at 128–129 (Colo.1983). In such cases, "the burden is placed upon the actor of ascertaining at his peril whether his deed is within the prohibition of any criminal statute." *People v. Caddy,* 189 Colo. 353, 355, 540 P.2d 1089, 1091 (1975). Those strict liability statutes which potentially abut upon constitutional freedoms must be narrowly drawn to avoid vagueness and overbreadth problems. *See Colautti v. Franklin,* 439 U.S. 379, 395, 99 S.Ct. 675, 685, 58 L.Ed.2d 596 (1979) ("[T]he constitutionality of a vague statutory standard is closely related to whether that standard incorporates a requirement of *mens rea.*"). The requirement of *mens rea* is particularly important when a legal standard has subjective overtones, as does the "interfere" standard of this ordinance.[5] *See Grayned v. City of Rockford,* 408 U.S. 104, 113–114, 92 S.Ct. 2294, 2301–02, 33 L.Ed.2d 222 (1972).[6]

We have held that "crimes which have their origin in common law must contain a *mens rea* element." *Bollier v. People, supra,* at 545. While there might be a colorable argument that the instant ordinance was intended as an exercise of police power beyond codification of a common law offense, we must choose that construction of the ordinance which will tend to "obviate or reduce any constitutional infirmities." *People v. Washburn,* 197 Colo. 419, 423, 593 P.2d 962, 964 (1979); *People v. Smith,* 638 P.2d 1, 3 (Colo.1981). We therefore hold that the ordinance here is a codification of the common law crime of "obstructing an officer." *See* 4 W. Blackstone, *Commentaries on the Laws of England,* 129 (T. Cooley Ed.1899). As such the crime necessarily contains an element of *mens rea* which may be read into the ordinance. *See Bollier v. People, supra,* at 546; *United States v. United States Gypsum Co., supra,* 438 U.S. at 437, 98 S.Ct. at 2873.

We construe Englewood Municipal Ordinance 11–6–15 to require a mental state of "knowingly." The Englewood Municipal

---

4. In *City and County of Denver v. Howard,* 622 P.2d 568 (Colo.1981), we reversed a superior court which had, *inter alia,* read a specific intent requirement into a similar ordinance. The issues of the instant case were not before us in *Howard.* Our holding in *Howard,* that a municipal ordinance can be broader and more inclusive than a state statute without impermissibly conflicting with that statute, remains good law.

   In *People v. Del Toro,* 155 Colo. 487, 395 P.2d 357 (1964), this Court assumed that a similar ordinance did not require proof of *mens rea.* To the extent that *Del Toro* is inconsistent with our ruling here, it is overruled.

5. The subjectivity of the "interfere" standard is underlined by the municipal court's conclusion in this case that the defendant interfered with police officers despite its finding that "if there was a delay in that arrest it is not attributable to this defendant."

6. In *Grayned,* the United States Supreme Court upheld a statute which prohibited the willful making of noise which disturbs the peace of a school session. The requirement that the acts be done willfully helped to dispel the vagueness of the standard. The court distinguished *Coates v. Cincinnati,* 402 U.S. 611, 91 S.Ct. 1686, 29 L.Ed.2d 214 (1971), in which an impermissibly vague statute hinged enforcement upon the "completely subjective" standard of "annoyance."

Ordinances do not contain a definition of "knowingly." For purposes of state statutory interpretation however, section 18–1–501(6), C.R.S.1973 (1978 Repl.Vol. 8) defines "knowingly" as follows:

> A person acts "knowingly" or "willfully" with respect to conduct or to a circumstance described by statute defining an offense when he is aware that his conduct is of such nature or that such circumstance exists. A person acts "knowingly" or "willfully", with respect to a result of his conduct, when he is aware that his conduct is practically certain to cause the result.

"Knowingly" is defined in *Black's Law Dictionary*, 5th ed. (1979) as "with knowledge; consciously; intelligently; willfully, intentionally." Both of the above definitions are accurate expressions of the common law understanding of "knowingly."

In this case the municipal court found that the defendant's motives "were not entirely bad." Nonetheless, holding that "any interference"—as opposed to "knowing" interference—constituted violation of the ordinance, the municipal court convicted the defendant. Our reading of the record convinces us that the defendant did not intend to hinder the officers and was not aware that he was interfering with them. Although the defendant failed to respond to a valid police order, it is clear that he did not understand the relationship between that order and the discharge by the police officers of their duty. Although one of the officers felt threatened by the defendant's conduct, the record shows that the defendant did not understand his conduct to be more threatening than that of the other observers on the scene. He believed that by delivering his roommate to the scene he had demonstrated his intent to cooperate with the officers. While we express no opinion as to whether the defendant's conduct in this case could have been reached by the criminal law, we hold—as did the district court—that the record is insufficient as a matter of law to support the defendant's conviction for violation of City of Englewood Ordinance 11–6–15.

The judgment of the district court is affirmed.