John T. CASADOS, Jerry Draper, Roland Carter, Augustine Villalobos, and all others similarly situated, Plaintiffs–Appellants,

v.

CITY AND COUNTY OF DENVER, Federico Pena in his official capacity as Mayor of the City and County of Denver, The Department of Public Works, and William Roberts in his official capacity as head of the City and County of Denver's Department of Public Works, Defendants–Appellees.

No. 90CA1357.

Colorado Court of Appeals,
Div. IV.

Jan. 16, 1992.

Rehearing Denied Feb. 27, 1992.

Certiorari Granted June 22, 1992.

Jennifer A. Payne, Longmont, John Mosby, Denver, for plaintiffs-appellants.

Patricia L. Wells, City Atty., Darlene M. Ebert, Asst. City Atty., Denver, for defendants-appellees.

Opinion by Judge ROTHENBERG.

Plaintiffs John T. Casados, Jerry Draper, Roland Carter, and Augustine Villalobos appeal the judgment of dismissal entered in favor of defendants, the City and County of Denver, Mayor Federico Pena (in his official capacity), the Department of Public Works, and William Roberts (in his official capacity). We reverse and remand.

In October 1988, Mayor Pena issued Executive Order 94 which established a drug and alcohol testing policy for City and County of Denver employees. The stated purpose of the executive order was to ensure "safe, healthful, and efficient working conditions for Denver employees."

Under the terms of the executive order, supervisors may require employees to submit to blood or urine tests at designated facilities if the supervisors have "reasonable suspicion" that the employees are using illegal drugs or alcohol or are under the influence of drugs or alcohol. Also, if there has been a workplace accident that may have been caused by human error which could be drug or alcohol related, then employees may be required to submit to testing even if they do not exhibit symptoms of being under the influence.

Employees who test positive or who refuse to be evaluated for drug or alcohol use are subject to disciplinary action including dismissal. Alternatively, employees who test positive may be evaluated for drug or alcohol abuse problems and ordered to undergo treatment.

Plaintiffs are employees of the City and County of Denver who, for various reasons, have been ordered to undergo drug and/or alcohol tests by their supervisors and, therefore, have been personally affected by the executive order. In February 1990, plaintiffs filed this class action lawsuit challenging the constitutionality of Executive Order 94 and requesting declaratory and injunctive relief barring its enforcement.

In their complaint, as subsequently amended, plaintiffs claimed that the executive order violated and continues to violate their rights to be free from unreasonable searches, to privacy, to due process of law, and to equal protection of the law. More specifically, plaintiffs claim that the executive order is unconstitutionally vague because it fails to define "reasonable suspicion," fails to identify the drugs for which they are being tested, fails to establish standards for determining when employees should be required to report for drug or alcohol testing, fails to provide for alternative testing methods, and fails to specify the testing methods to be used.

The district court granted defendants' motion to dismiss plaintiffs' complaint for failure to state a claim for relief.

## I.

■ The initial issue for our resolution is whether this court has jurisdiction to address the plaintiffs' facial constitutional challenges to the executive order. We conclude that it does.

Under § 13–4–102(1), C.R.S. (1987 Repl. Vol. 6A), the court of appeals is accorded jurisdiction over appeals from final judgments of the district courts except in, *inter alia:*

(b) Cases in which the constitutionality of a statute, municipal charter provision, or an ordinance is in question....

■ If a statute is plain and its meaning is clear it must be interpreted as written. *Williams Natural Gas Co. v. Mesa Operating Limited Partnership*, 778 P.2d 309 (Colo.App.1989). Hence, since we are here being asked to determine the facial constitutionality of an executive order rather than a statute, charter provision, or ordinance, this court does have jurisdiction to address the plaintiffs' contentions.

## II.

■ Plaintiffs first contend that the executive order is unconstitutionally vague

and violates their rights to due process. We disagree.

We believe the same standard of review should be used for an executive order that is used for a statute or ordinance. An ordinance or statute is presumed to be constitutional, and the burden is on the party attacking it to establish that it is unconstitutional beyond a reasonable doubt. *People ex rel. Arvada v. Nissen*, 650 P.2d 547 (Colo.1982). A statute or ordinance which is unconstitutionally vague constitutes a denial of due process of law under the United States and Colorado Constitutions. *People v. Moyer*, 670 P.2d 785 (Colo.1983).

"The essence of a vagueness challenge is that the law fails to reasonably forewarn persons of ordinary intelligence of what is prohibited ... and lends itself to arbitrary and discriminatory enforcement because it fails to provide explicit standards for those who apply it." *City of Englewood v. Hammes*, 671 P.2d 947 (Colo.1983). The root of the vagueness doctrine is fairness and notice of the prohibited conduct. *See Puzick v. Colorado Springs*, 680 P.2d 1283 (Colo.App.1983).

A provision "is not void for vagueness if it fairly describes the conduct forbidden, and persons of common intelligence can readily understand its meaning and application." *Eckley v. Colorado Real Estate Commission*, 752 P.2d 68, 73 (Colo.1988). Further, "[a] high degree of exactitude in draftsmanship is not required for an ordinance to pass due process scrutiny." *Price v. City of Lakewood*, 818 P.2d 763 (Colo. 1991).

The main thrust of plaintiffs' argument is that the executive order is unconstitutionally vague because it does not precisely define "reasonable suspicion" or identify the drugs for which an employee can be tested. However, a number of recent cases throughout the country have upheld drug or alcohol testing based on similar "reasonable suspicion" standards.

For example, in *Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989), several railway employees' unions unsuccessfully challenged the constitutionality of Federal Railroad Administration Safety regulations which permitted blood and urine testing of railroad employees under certain circumstances. The federal regulations provided that supervisors may order employees to submit to breath tests if the supervisors had "reasonable suspicion" that the employees were under the influence of alcohol. The reasonable suspicion had to be "based upon specific, personal observations concerning the appearance, behavior, speech or body odors of the employee."

The railroad safety regulations further provided that employees may be required to submit to urine tests if two supervisors suspected alcohol impairment. Further, supervisors were required to receive specialized training in detecting drug intoxication before they required an employee to be tested for drugs.

In sum, the Supreme Court upheld testing based upon "reasonable suspicion" where the federal regulations specified the conduct allowing supervisors to order testing and the regulations also required supervisors to receive specialized training.

Similarly, in *American Federation of Government Employees v. Cavazos*, 721 F.Supp. 1361 (D.C.Cir.1989), plaintiffs' challenge to the constitutionality of the Department of Education's random urinalysis testing program was also unsuccessful. That program allowed testing of employees if supervisors had "reasonable suspicion" to believe the employees were using drugs, and it delineated the grounds that might constitute reasonable suspicion. The plan also specified the drugs for which employees might be tested.

Plaintiffs acknowledge these cases but contend that they involved regulations and testing programs which specified the conduct giving rise to "reasonable suspicion" that employees were using alcohol or drugs. In contrast, Denver's drug testing policy neither defines reasonable suspicion nor provides training for supervisors or standards for them to follow in determining whether there is reasonable suspicion

to believe that an employee is under the influence of drugs or alcohol.

Thus, according to plaintiffs, Denver's executive order allows the exercise of unbridled discretion by supervisors, allows supervisors to declare arbitrarily that employees are under the influence, and allows supervisors to order employees to submit to blood or urine tests.

Although we agree that it might have been preferable for the executive order to have specified the conduct giving rise to "reasonable suspicion" and to have provided for the training of supervisors, we cannot overlook the fact that the term "reasonable suspicion" has been widely used with approval in Colorado. *See Colorado v. Sosbe*, 789 P.2d 1113 (Colo.1990) (reasonable suspicion of traffic violation found because defendant was speeding); *People v. Garcia*, 789 P.2d 190 (Colo.1990) (reasonable suspicion not present when stop was made based on anonymous tip and officer's observations of non-criminal activity); *People v. Thomas*, 660 P.2d 1272 (Colo.1983) (reasonable suspicion not present when police recognized defendant, who was "more or less just standing in the lot" and then ran after police made eye contact).

We therefore conclude that the term "reasonable suspicion," used in the context of this executive order, is sufficiently clear so as to provide reasonable notice to persons of ordinary intelligence of what is prohibited. *See City of Englewood v. Hammes, supra*. Nor does the executive order's failure to define the drugs for which employees can be tested make the order unconstitutionally vague. Thus, the plaintiffs have failed to meet their burden of proving Executive Order 94 unconstitutionally vague.

### III.

■ Plaintiffs next contend that the trial court erred in dismissing their complaint for failure to state a claim for relief because Executive Order 94 violates their Fourth Amendment rights to be free from unreasonable searches and seizures. We agree that such dismissal was error.

The Fourth Amendment protects individuals from unreasonable governmental intrusion provided that they have a reasonable expectation of privacy. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

■ The act of taking blood for a blood test and the process of collecting and testing urine samples constitute an invasion of an employee's privacy interest and therefore constitute a "search" under the Fourth Amendment. *See Skinner v. Railway Labor Executives' Ass'n, supra; People v. Williams*, 192 Colo. 249, 557 P.2d 399 (1976) (the taking of a blood sample is a search thereby requiring probable cause); *Derdeyn v. University of Colorado*, 832 P.2d 1031 (Colo.App.1991) (collection and testing of urine samples is a "search" within the meaning of the Fourth Amendment).

■ However, the Fourth Amendment does not prohibit all searches, only unreasonable ones. *Terry v. Ohio, supra*. In order to determine whether a particular search is reasonable, the courts must balance the intrusion upon an individual's Fourth Amendment interests against the legitimate governmental interests that may be promoted by the search. *See Skinner v. Railway Labor Executives' Ass'n, supra*.

Thus, in *National Treasury Employees' Union v. Von Raab*, 489 U.S. 656, 109 S.Ct. 1384, 103 L.Ed.2d 685 (1989), the United States Supreme Court upheld the testing of all Customs Service employees seeking transfers to positions involving the interdiction and seizure of contraband or requiring the employees to carry firearms. The Court reasoned that the government's compelling interest in safety outweighed the employees' privacy interests. *See also Skinner v. Railway Labor Executives' Ass'n, supra* (urine testing of railroad employees involved in train accidents upheld; government's interest in public safety outweighed the employees' privacy interests); *Taylor v. O'Grady*, 888 F.2d 1189 (7th Cir. 1989) (mandatory urine testing of correctional officers who carry firearms or have regular access to inmates upheld because

drug-impaired employees could cause immediate safety risks); *American Federation of Government Employees v. Skinner*, 885 F.2d 884 (D.C.Cir.1989) (Department of Transportation's random testing of certain employees, largely air traffic controllers, upheld as constitutional because of the "safety and security criticalness" of their jobs).

In contrast, the courts have not permitted employees to be tested if the sole governmental interest was merely "to maintain the integrity of the work force." Rather, safety considerations had to be involved. *See Taylor v. O'Grady, supra* (governmental interest in maintaining the integrity of the work force insufficient to overcome the privacy interests of correctional employees who do not come into regular contact with prisoners); *National Federation of Government Employees v. Cheney*, 884 F.2d 603 (D.C.Cir.1989) (random urine testing of Army aviation and police/guard employees upheld for safety reasons; however, testing of Army lab technicians not permitted because the governmental interest in that testing does not outweigh the employees' expectations of privacy); *Harmon v. Thornberg*, 878 F.2d 484 (D.C.Cir. 1989) (random urine testing of employees with access to sensitive information justified; however, governmental interest in maintaining the integrity of the work force and public safety were not sufficient to allow testing of other employees).

Our supreme court has consistently held that courts should interpret statutes to avoid a construction that might contravene constitutional standards. *Colorado Dog Fanciers, Inc. v. City & County of Denver*, 820 P.2d 644 (Colo.1991); *Forbes v. Poudre School District R–1*, 791 P.2d 675 (Colo.1990). The same is true of executive orders such as the one at issue here.

The stated purpose of Executive Order 94 is to maintain "safe, healthful, and efficient working conditions for ... employees," and it is reasonable to assume that some Denver employees such as firefighters and police officers work in safety sensitive positions, or perform jobs involving immediate safety risks which might be caused by drug or alcohol impairment. The problem, however, is that the executive order covers all employees, and the general governmental interest in maintaining a safe work place does not outweigh the privacy interests of those employees not in safety sensitive positions. Nor does it reflect a compelling state interest rising to the level required by *Skinner* and *Von Raab* as to such employees not in safety sensitive positions. *See National Treasury Employees' Union v. Von Raab, supra; National Federation of Government Employees v. Cheney, supra.*

Thus, although other disciplinary measures may exist to prevent drug and/or alcohol use by Denver employees not working in safety sensitive positions, we conclude that the Fourth Amendment and analogous provisions of the Colorado Constitution require that Executive Order 94 be construed to limit drug and/or alcohol testing only to those Denver employees who work in safety sensitive positions. *See Derdeyn v. University of Colorado, supra* (no compelling state interest found for testing intercollegiate athletes at University of Colorado).

■ Finally, the question of which plaintiffs, if any, may be tested for drugs and/or alcohol cannot be resolved without an evidentiary hearing or, at least, proper verification describing plaintiffs' job functions and their relationships to public safety. Here, however, the trial court dismissed the complaint at an early stage in the proceedings, and the record before us contains no factual determinations as to which of plaintiffs' particular jobs are of a critical nature or involve immediate safety risks that might be caused by drug or alcohol-impaired employees.

A motion to dismiss for failure to state a claim should not be granted unless the plaintiff can prove no set of facts to support his claim which would entitle him to relief. *See Davidson v. Dill*, 180 Colo. 123, 503 P.2d 157 (1972).

Here, we conclude that the plaintiffs have stated a claim that the executive order violates their rights to be free from unreasonable searches under the Fourth

**1054**

Amendment and Colorado Const. art. II, §§ 7 & 29. Thus, the trial court erred in dismissing the complaint.

In view of these rulings, we need not address plaintiffs' remaining contentions.

The judgment of dismissal is reversed, and the cause is remanded for further proceedings consistent with this opinion.

STERNBERG, C.J., and HUME, J., concur.