Thomas STAMM, Plaintiff–Appellee,

v.

CITY AND COUNTY OF DENVER; Department of Public Works, Stapleton International Airport; Career Service Authority; Margot Jones, as Hearing Officer for the Career Service Authority, Defendants–Appellants.

No. 92CA0265.

Colorado Court of Appeals,
Div. V.

June 3, 1993.

DiManna & Jackson, Gary M. Jackson, Denver, for plaintiff-appellee.

Daniel E. Muse, City Atty., John R. Palermo, Asst. City Atty., Denver, for defendants-appellants.

Opinion by Judge HUME.

Defendants, City and County of Denver, Department of Public Works (Department), Stapleton International Airport, the Denver Career Service Authority (Authority), and Margot Jones, as hearing officer for the Authority, appeal the district court judgment that vacated the action of the Authority terminating the employment of plaintiff, Thomas Stamm, and ordered his reinstatement with back pay and benefits. We reverse.

Plaintiff was employed with the City and County of Denver Department of Public Works at Stapleton International Airport. As a City employee, he was subject to rules promulgated by the Authority. The Denver Career Service Rules provide that an employee shall not be disciplined or dismissed without just cause and list numerous grounds both for immediate dismissal and for progressive discipline.

In October 1988, Mayor Peña issued Executive Order 94 establishing a policy prohibiting the use of drugs or alcohol in the workplace by City employees. The Authority subsequently amended its rule pertaining to alcohol so as to mirror the language in Executive Order 94 prohibiting employees from "being under the influence or impaired by alcohol" while at work.

On April 11, 1989, plaintiff arrived at work at 7:45 a.m. and was assigned to place trash in a dumpster and to stack plywood. Prior to beginning those assignments, he conversed with a foreman concerning a job reclassification. During this conversation, the foreman became suspicious that plaintiff had been drinking and so notified the administrative services supervisor after plaintiff had returned to his assigned duties. The foreman and supervisor observed plaintiff in three different areas and determined that there was reason to believe that he was under the influence of alcohol. Subsequently, the supervisor ordered plaintiff to undergo a blood alcohol test at Denver General Hospital.

After a disciplinary hearing, and as a consequence of plaintiff's conduct on April 11, the results of the blood alcohol test, and

his disciplinary history, plaintiff's employment was terminated by the Department.

Plaintiff appealed his termination to the Authority on grounds that the Department had treated "non-anglo" individuals differently than it treated him under the same or similar circumstances and that he should have been offered an opportunity to participate in an alcohol treatment program in exchange for some lesser form of discipline.

A hearing officer for the Authority found that plaintiff had failed to establish a prima facie case of race discrimination and that the Department had sustained its burden to establish that plaintiff had violated various provisions of the Denver Career Service Rules by his conduct in appearing at work under the influence of alcohol. The hearing officer concluded that the Department had acted properly in dismissing him. The Authority denied plaintiff's subsequent petition for reconsideration of the hearing officer's decision.

Plaintiff then filed a complaint seeking judicial review pursuant to C.R.C.P. 106 and for declaratory relief pursuant to C.R.C.P. 57, resulting in the judgment now before us on this appeal.

## I.

Defendants first contend that the district court erred in determining that the language of Executive Order 94 was unconstitutionally vague because it failed to provide a particularized standard for determining what constituted "being under the influence or impaired by alcohol." We agree.

■ The same standard of review is used for an executive order as is used for a statute or ordinance. Thus, an executive order is presumed to be constitutional, and the burden is on a party attacking it to prove its unconstitutionality beyond a reasonable doubt. *Casados v. City & County of Denver,* 832 P.2d 1048 (Colo.App.1992).

■ The essence of a vagueness challenge is that the law fails reasonably to forewarn persons of ordinary intelligence of prohibited conduct and lends itself to arbitrary and discriminatory enforcement because it fails to provide explicit standards for those who apply it. *People v. Seven–Thirty Five East Colfax, Inc.,* 697 P.2d 348 (Colo.1985). The root of the vagueness doctrine is fairness and reasonable notice of prohibited conduct. *Casados v. City & County of Denver, supra.*

■ A provision is not void for vagueness if it fairly describes forbidden conduct so as to enable persons of common intelligence readily to understand its meaning and application. *Colorado State Board of Medical Examiners v. Hoffner,* 832 P.2d 1062 (Colo.App.1992).

■ Statutes often contain broad terms to allow their applicability to varied circumstances. However, generality is not the equivalent of vagueness, and statutory terms used need not be defined with mathematical precision in order to withstand a vagueness challenge. *Watso v. Colorado Department of Social Services,* 841 P.2d 299 (Colo.1992).

■ Words and phrases used in statutes and other official regulations are to be accorded their generally accepted meaning, and courts have a duty to interpret such language in a reasonable and practical manner so as to impart a rational and cogent meaning to it. *See People v. Rosburg,* 805 P.2d 432 (Colo.1991).

■ Here, both Executive Order 94 and Denver Career Service Rule 16–22(3) provide that "being under the influence or impaired by alcohol while performing City business or while in a City facility" is cause for immediate dismissal but fail explicitly to define what constitutes a violation. However, "under the influence or impaired by alcohol" are words which are commonly used in statutes, ordinances, and regulations, and persons of ordinary intelligence need not guess at their meaning.

"Impair" is "to make worse; diminish in quantity, value, excellence or strength; do harm to." Webster's Third International Dictionary 1130 (1976). Hence, read in the context of alcohol consumption, an individu-

al of ordinary intelligence can discern the meaning of being "impaired by alcohol."

Furthermore, our supreme court has held that:

> A person 'is under the influence of intoxicating liquor,' ... when he has taken a drink of alcoholic liquor which affects him so that in the slightest degree he is less able, either mentally or physically or both, to exercise a clear judgment and with steady hands and nerves operate an automobile with safety to himself and to the public, and when this mental and physical condition exists after imbibing intoxicating liquor, even though the person has only one drink thereof, he 'is under the influence of intoxicating liquor'....

*Snyder v. Denver*, 123 Colo. 222, 226, 227 P.2d 341, 343 (1951).

Moreover in *Thompson v. People*, 181 Colo. 194, 510 P.2d 311 (1973), the court addressed the issue of whether the language "impaired by the consumption of alcohol" as contained in, but not defined by, the then existing traffic code was unconstitutionally vague. The court held that such language provided sufficiently precise standards to inform readers as to the nature of the proscribed conduct and cited with approval the *Snyder* test as defining "impaired by the consumption of alcohol." It further held that whether an individual was in violation of the statute was a question for the trier of fact based on all of the evidence presented and was not solely dependent on chemical tests to establish impairment.

Executive Order 94 provides that its focus and concern are with "serious safety and health risks not only to the user but to all those who work with the user" and that "the use of alcohol in the workplace may also pose unacceptable risks for safe, healthful and efficient operations." Therefore, when the phrase "under the influence or impaired by alcohol" is viewed in light of its ordinary meaning, past judicial interpretations of similar language, and in the context of the policies of Executive Order 94, we conclude that it is sufficient to apprise and enable reasonable persons to distinguish between permissible and impermissible conduct and is not so ill-defined as to create a danger of arbitrary or capricious enforcement.

■ Moreover, the Authority provides for a disciplinary hearing to determine whether an individual violated a Denver Career Service Rule and for both administrative and judicial review of the hearing officer's initial determinations. *See* Denver Career Service Rules 19–10(b) & 19–21(a). Therefore, both the applicable standard and procedural safeguards are sufficient to insure against an arbitrary or unbridled exercise of agency discretion in applying and enforcing the provisions of Executive Order 94 and Denver Career Service Rule 16–22(3). *See Electron Corp. v. Wuerz*, 820 P.2d 356 (Colo.App.1991)

## II.

Defendants further contend that the district court erred in determining that the hearing officer used no standard to determine whether plaintiff was "under the influence or impaired by alcohol." We agree.

■ A reviewing court is required to set aside the final orders of an administrative agency if the agency applied an erroneous legal standard. *Electric Power Research Institute, Inc. v. City & County of Denver*, 737 P.2d 822 (Colo.1987).

Here, however, we conclude that the hearing officer properly accorded the language "being under the influence or impaired by alcohol" its generally accepted meaning, and thus the district court erred in ruling to the contrary.

## III.

■ Defendants next contend that the district court erred in determining that the City had improperly applied Executive Order 94 to "weed out" all employees with alcohol problems. We agree.

Plaintiff did not raise before the Authority the issue that the Department applied Executive Order 94 in an impermissibly discriminatory fashion against employees

with alcohol problems, and the hearing officer did not address it. Therefore, the district court erred in ruling on that issue. *See Monolith Portland Cement v. Burak,* 772 P.2d 688 (Colo.App.1989).

## IV.

Defendants finally contend that the district court erred in reinstating plaintiff's employment because there is record support for the hearing officer's ruling that immediate dismissal was appropriate under the circumstances demonstrated. We agree.

In a C.R.C.P. 106(a)(4) proceeding, a reviewing court may consider, in determining the existence of an abuse of discretion, whether the hearing officer misconstrued or misapplied the applicable law. *Electric Power Research Institute, Inc. v. City & County of Denver, supra.* But, it must consider an administrative agency's factual findings in light of the whole record, *People v. Gibbons,* 685 P.2d 168 (Colo. 1984), and must defer to the hearing officer's decision if competent evidence in the record supports it. *Van Sickle v. Boyes,* 797 P.2d 1267 (Colo.1990).

If evidence is conflicting, a hearing officer's findings are binding on appeal, and the reviewing court may not substitute its judgment for that of the fact finder. *Glasmann v. State,* 719 P.2d 1096 (Colo. App.1986).

The role of this court is to consider whether there is sufficient evidentiary support in the record for the decision of the administrative tribunal, and not whether there is evidence to support the decision of the district court. *Ross v. Fire & Police Pension Ass'n,* 713 P.2d 1304 (Colo.1986); C.R.C.P. 106(a)(4).

Here, testimony indicated that, while at work on the morning in question, plaintiff smelled of alcohol; his eyes were bloodshot; he was uncharacteristically loud, argumentative, and belligerent; his speech was slurred; his motor functions were uncoordinated; he and a co-worker were unnecessarily and dangerously throwing lumber so as to cause another employee to tell them to "be careful ... before they hurt someone"; plaintiff attempted to throw trash into a dumpster but missed; and his blood alcohol content was .066 grams per 100 milliliters of blood.

We conclude that this evidence provides ample support for the hearing officer's determination that plaintiff was "functionally impaired," that he was "under the influence or impaired by alcohol" within the meaning of Denver Career Service Rule 16–22(3) and Executive Order 94, and that plaintiff also violated various other Denver Career Service Rules, some of which authorized either progressive discipline or, in appropriate circumstances, immediate dismissal. *See Ross v. Fire & Police Pension Ass'n, supra.*

Therefore, the district court's judgment is reversed, and the order of the Authority is reinstated.

DAVIDSON and TAUBMAN, JJ., concur.