TABLE SERVICES, LTD, d/b/a La Renaissance, Inc., a Colorado corporation; S D J Barton, Inc., d/b/a/ the Trough Restaurant, a Colorado corporation; J. Rodger Woody, d/b/a Woody's Drive–In, a Colorado business; Wooden Nickel, Inc., d/b/a the Wooden Nickel, a Colorado corporation; First Street Cafe Corporation, d/b/a First Street Cafe, a Colorado corporation; AD–Truck, Inc., d/b/a

Copper Kitchen Cafe, a Colorado corporation; Lost Valley Ranch Corporation, d/b/a Lost Valley Ranch, a Colorado corporation; and Peck House, Inc., d/b/a the Peck House, a Colorado corporation, Plaintiffs–Appellants,

v.

John HICKENLOOPER, as Governor of the State of Colorado, and Michael McArdle, as Director of the Division of Labor, Colorado Department of Labor and Employment, Defendants–Appellees.

No. 09CA2729.

Colorado Court of Appeals, Div. VI.

April 28, 2011.

Rehearing Denied June 2, 2011.

Greenberg Traurig, LLP, Douglas J. Friednash, Cuneyt A. Akay, Denver, Colorado, for Plaintiffs–Appellants.

John W. Suthers, Attorney General, Daniel D. Domenico, Solicitor General, Geoffrey N. Blue, Deputy Attorney General, Colorado, for Defendants–Appellees.

Opinion by Judge RICHMAN.

In this case, we are called upon to determine the constitutionality of Amendment 42, enacted by Colorado voters in November 2006, for the purpose of raising the minimum hourly wage in Colorado from $5.15 to $6.85, and requiring thereafter an annual adjustment to the minimum wage based on inflation. Plaintiffs, Table Services, LTD, and seven other businesses, appeal the district court's judgment dismissing their challenge to the constitutionality of Amendment 42. We affirm.

## I. Background

The material facts are not in dispute. Plaintiffs are owners and operators of restaurants and hotels primarily located in smaller cities and towns in rural areas of Colorado. Plaintiffs are required to abide by minimum wage laws and the minimum hourly wage established pursuant to Amendment 42. Defendants, collectively, are charged with enforcing minimum wage laws throughout the state of Colorado.

Amendment 42, codified as article XVIII, section 15 of the Colorado Constitution, in its entirety states as follows:

Effective January 1, 2007, Colorado's minimum wage shall be increased to $6.85 per hour and shall be adjusted annually for inflation, as measured by the Consumer Price Index used for Colorado. This minimum wage shall be paid to employees who receive the state or federal minimum wage. No more than $3.02 per hour in tip income may be used to offset the minimum wage of employees who regularly receive tips.

In March 2007, the Colorado General Assembly enacted enabling legislation, authorizing the Director of the Division of Labor to "issue only such rules as are necessary to carry out the provisions" of Amendment 42. *See* § 8–6–108.5(3), C.R.S.2010. In November 2007, the Colorado Department of Labor and Employment, Division of Labor (DOL) issued its first inflation adjustment to

Amendment 42's minimum wage by utilizing a consumer price index calculated by the United States Department of Labor, Bureau of Labor Statistics (BLS), referred to as the Denver–Boulder–Greeley consumer price index (DBG–CPI). This adjustment increased the minimum wage to $7.02 per hour for 2008. Subsequently, the DOL has issued yearly minimum wage adjustments based on the DBG–CPI.

The Consumer Price Index (CPI) is published by the BLS and measures the average change over time in the prices paid by urban consumers for a variety of consumer goods and services. *See* http://www.bls.gov/cpi/cpifaq.htm. The CPI reflects spending patterns for each of two population groups: all urban consumers and all urban wage earners and clerical workers. *Id.* The BLS annually publishes a national CPI for the entire country, and on a monthly basis publishes a regional CPI for each of four census regions of the United States: Northeast, Midwest, South, and West. Colorado is included in the West region. Additionally, on a semiannual basis, the BLS publishes CPIs for twenty-seven different metropolitan areas, one of which is the DBG–CPI.

Long before the enactment of Amendment 42, the DOL had been charged with the creation and enforcement of minimum wages within the state under the Colorado Minimum Wage Act (the Act). §§ 8–6–101 to –119, C.R.S.2010. The Act provides for the Director of the DOL to determine "the minimum wages sufficient for living wages." § 8–6–106. The Director had last raised the minimum wage in 1997 to $5.15 to match the federal minimum wage. *See* Colorado Minimum Wage Order No. 22, 7 Code Colo. Regs. § 1103–1. One of the arguments offered for the passage of Amendment 42 was that an increase in the minimum wage was long overdue as the federal government had not raised the minimum wage for nine years. Proponents pointed out that the proposed minimum wage of $6.85 would restore the wage to near its average buying power over the last fifty years, and that adjusting the wage for inflation would guarantee that the wage will not lose its buying power in the future. *See* Legis. Council of Colo. General Assembly, Analysis of 2006 Ballot Proposals, 554–1, pt. 1, at 11–14 (2006).

In August 2008, plaintiffs filed a complaint challenging the constitutionality of the inflation adjustment provision of Amendment 42. Plaintiffs asserted that the amendment's language providing for annual adjustment to the minimum wage for inflation "as measured by the Consumer Price Index used for Colorado" violated the Fourteenth Amendment because it was impermissibly vague and ambiguous, contending that there is no Colorado-specific CPI. Plaintiffs also asserted that the DOL exceeded its constitutional and statutory authority, acted arbitrarily and capriciously, and abused its discretion by utilizing the DBG–CPI to adjust the minimum wage for inflation because it applied a CPI reflecting inflation in urban areas, not rural areas. Plaintiffs also alleged that Amendment 42 and the application of the DBG–CPI violate their right to equal protection and result in disparate treatment because they "single[ ] out rural business for disparate treatment in comparison to similarly situated urban businesses."

The district court granted defendants' motion to dismiss plaintiffs' complaint under C.R.C.P. 12(b)(5) for failure to state a claim on which relief may be granted. It concluded that Amendment 42 is not unconstitutionally vague because the language "used for" could be construed as a descriptive term of art, rather than a definitional term, as plaintiffs suggested. This descriptive term allows the DOL to choose which CPI to utilize when calculating the inflation adjustment to the minimum wage. As a result, the court found that the text of Amendment 42 created a standard such that persons of ordinary intelligence are not left to speculate or guess at its meaning or application.

Additionally, the district court rejected plaintiffs' substantive due process and equal protection claims. It found that under the rational basis test, the DOL's use of the DBG–CPI was a rational mechanism to measure inflation and to determine Colorado's annual minimum wage adjustment. Finally, the district court concluded that the DOL's use of the DBG–CPI was neither arbitrary, capricious, nor an abuse of discre-

tion, and therefore the DOL did not exceed its authority in its application of the local CPI.

On appeal, plaintiffs argue only that the trial court erred in dismissing their claims because the Amendment is void for vagueness and the DOL exceeded its authority in applying the DBG–CPI to calculate the annual minimum wage for Colorado.

## II. Standard of Review

■ We review de novo a dismissal of a complaint for failure to state a claim because it involves only questions of law. *Dotson v. Bernstein,* 207 P.3d 911, 912 (Colo.App.2009).

## III. Constitutionality of Amendment 42

Plaintiffs contend that the district court erred in dismissing their constitutional challenge to Amendment 42 as void for vagueness because the phrase "the Consumer Price Index used for Colorado" does not create or identify a measurable standard by which to adjust the minimum wage, and is therefore incapable of being fairly and properly applied. Based on this assertion, we construe plaintiffs' claim as a facial challenge to Amendment 42 because plaintiffs assert that the Amendment is "incapable of valid application." *Dias v. City & County of Denver,* 567 F.3d 1169, 1179–80 (10th Cir.2009) ("[F]acial challenges are appropriate ... when a plaintiff seeks pre-enforcement review of a statute because it is incapable of valid application."). We disagree with plaintiffs' contention.

## A. Void for Vagueness Law

■ When analyzing a constitutional provision pursuant to a void for vagueness challenge, we evaluate the provision the same as we would a statutory provision. *See Independence Institute v. Coffman,* 209 P.3d 1130, 1136–37 (Colo.App.2008). Thus, a constitutional provision, like a statute, is presumed to be constitutional, and the parties seeking to set them aside must prove their case beyond a reasonable doubt. *See Simpson v. Cotton Creek Circles, LLC,* 181 P.3d 252, 261 (Colo.2008). Every reasonable presumption is to be indulged in favor of a constitutional amendment which the people

have adopted at a general election. *City of Glendale v. Buchanan,* 195 Colo. 267, 272, 578 P.2d 221, 224 (1978).

■ "A statute that forbids or requires the doing of an act in terms so vague that persons of common intelligence must necessarily guess as to its meaning and differ as to its application" is unconstitutional. *Smith v. Charnes,* 728 P.2d 1287, 1290 (Colo.1986). Conversely, a statute satisfies the requirements of due process when it provides fair notice and sets forth sufficiently definite standards to ensure uniform, nondiscriminatory enforcement. *See People v. Shell,* 148 P.3d 162, 172 (Colo.2006).

■ "We also recognize that statutory terms should be construed in a manner that avoids constitutional infirmities." *People v. Zapotocky,* 869 P.2d 1234, 1240 (Colo.1994). "Thus, if a statute is capable of alternative constructions, one of which is constitutional, then the constitutional interpretation must be adopted." *Id.*

■ Constitutional provisions, like statutes, often contain broad terms to allow their applicability to various circumstances. *Stamm v. City & County of Denver,* 856 P.2d 54, 56 (Colo.App.1993). "[G]enerality is not the equivalent of vagueness, and ... terms used need not be defined with mathematical precision in order to withstand a vagueness challenge." *Id.* A provision is not unconstitutionally vague simply because it could have been drafted with greater precision. *Bd. of Educ. v. Wilder,* 960 P.2d 695, 703 (Colo. 1998). However, "[a] statute must be sufficiently specific in order to give fair warning of the conduct prohibited and, simultaneously, sufficiently general to address the essential problem under varied circumstances and during changing times." *Colo. Auto & Truck Wreckers Ass'n v. Dep't of Revenue,* 618 P.2d 646, 651 (Colo.1980).

■ "Where fairness can be achieved by a commonsense reading of the statute, we will not adopt a hypertechnical construction to invalidate the provision." *Americans United for Separation of Church & State Fund, Inc. v. State,* 648 P.2d 1072, 1086 (Colo.1982) (quoting *People v. Garcia,* 197

Colo. 550, 554, 595 P.2d 228, 231 (1979)). "Words and phrases . . . are to be accorded their generally accepted meaning, and courts have a duty to interpret such language in a reasonable and practical manner so as to impart a rational and cogent meaning to it." *Stamm*, 856 P.2d at 56.

■ When asserting a facial challenge, "plaintiffs face a heavy burden: They must 'demonstrate that the law is impermissibly vague in all of its applications.'" *Dias*, 567 F.3d at 1180 (quoting *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 497, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982)); *see also Shell*, 148 P.3d at 172; *People v. Hickman*, 988 P.2d 628, 643 (Colo. 1999).

## B. Application

Applying the above principles, we conclude that Amendment 42 is not facially void for vagueness.

■ The district court found, and we agree, that the language at issue—"the Consumer Price Index used for Colorado"—is not "impermissibly vague in all of its applications." *Hoffman*, 455 U.S. at 497, 102 S.Ct. 1186. Rather, a "rational and cogent" interpretation of the provision directs an annual adjustment to the minimum wage based on an index commonly "used" to calculate inflation. The Amendment describes this index generally as one that is "used for" Colorado. While the language does not designate a specific index, due process of law has never required mathematical exactitude in legislative draftsmanship. *See People v. Blue*, 190 Colo. 95, 99, 544 P.2d 385, 388 (1975). Generality does not equate to vagueness. *Wilder*, 960 P.2d at 703.

Rather, the Amendment, coupled with the enabling legislation, directs the DOL to annually adjust the minimum wage for inflation by employing the CPI "used for Colorado." The Amendment provides sufficient specificity that the DOL can determine which CPI is representative of the degree of inflation for Colorado. The language of the Amendment is not so broad as to violate due process. *Stamm*, 856 P.2d at 56 ("Statutes often contain broad terms to allow their applicability to varied circumstances."). The language also provides notice to employers, employees, and the general public of an annual minimum wage adjustment, while maintaining sufficient generality to allow for modification in the method used in the event of changed circumstances.

We disagree for two reasons with plaintiffs' contention that the trial court erred in finding that the phrase "the Consumer Price Index used for Colorado" is a descriptive term, rather than concluding that the phrase is a "definable term of art." First, we note it is undisputed that the phrase is not defined in Amendment 42, nor do plaintiffs contend that the term is defined anywhere else. Second, plaintiffs offer no definition of the phrase; rather, they simply argue that no such technical measurement is published by the BLS.

■ We also disagree that the lack of a technical definition of the phrase renders the Amendment incomprehensible and therefore unconstitutional. When analyzing a facial challenge, we need only determine whether the law is incomprehensible in *all* of its constructions. The district court found a plausible interpretation of the Amendment by reading the words "used for" in context with the rest of the text. Thus, plaintiffs have failed to show how "no set of circumstances exists under which the [Amendment] would be valid." *United States v. Salerno*, 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987).

Likewise, we are not persuaded by plaintiffs' contention that the trial court ignored the Amendment's plain language. Plaintiffs assert that the Amendment's language requires the DOL to use the CPI representing Colorado because the word "for" means "representing," and thus the only interpretation of the language mandates the utilization of a non-existent CPI. This argument suggests that we are to read the Amendment as requiring the application of "Colorado's Consumer Price Index." Yet, it is undisputed that there is no specific Colorado CPI, but instead only national, regional, and local CPIs. Because reading the Amendment as prescribing a non-existent state CPI would lead to an illogical result, we must avoid such

an interpretation. *See Smith v. Executive Custom Homes, Inc.*, 230 P.3d 1186, 1190 (Colo.2010).

Instead, giving the Amendment's words their "generally accepted meaning," *see Stamm*, 856 P.2d at 56, we conclude that the language is not so vague as to be unconstitutional. Plaintiffs point out that the word "for" also means "on behalf of" according to Merriam–Webster's dictionary. *See* Merriam–Webster Online Dictionary, *available at* http://www.merriam-webster.com/dictionary/ for (last visited April 18, 2011). Applying this definition, we reach the same result: a reasonable interpretation of the phrase "the Consumer Price Index used for Colorado" is that the Amendment provides for the application of a CPI that is used "on behalf of" Colorado for that year. Use of the DBG–CPI as an inflation adjustor is not unprecedented; it is expressly provided as the inflation adjustor under TABOR, Colo. Const. art. X, § 20(2)(f); the Campaign and Political Finance amendment, *id.* art. XXVIII, § 3(13); and the Standards of Conduct in Government amendment, *id.* art. XXIX, § 3(6). Thus, a reasonable person would understand that the Amendment requires application of the CPI used "on behalf of" Colorado that year—which commonly includes the DBG–CPI.

One of the major concerns regarding vague constitutional provisions or statutes is that they "impermissibly delegate[ ] basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory applications." *Hoffman Estates*, 455 U.S. at 498, 102 S.Ct. 1186 (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 108–09, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972)); *see also Kruse v. Town of Castle Rock*, 192 P.3d 591, 599 (Colo.App. 2008) (finding the phrase "meeting several of the criteria" broad enough to allow application of criteria in varied circumstances, but not so vague as to be unconstitutional). Here, however, the Amendment sets forth a base amount for the minimum wage, requires an annual adjustment to that wage, and gives an index on which the DOL must base its inflation adjustment. The only matter left to

the DOL is to determine which CPI published by the BLS is "used for Colorado" that year. Thus, the Amendment's language gives sufficient minimal guidelines to prevent "arbitrary and discriminatory application." *Hoffman Estates*, 455 U.S. at 498, 102 S.Ct. 1186.

The concern for discriminatory and arbitrary enforcement is further diminished here because, in determining the appropriate CPI to use when annually adjusting the minimum wage, the DOL engages in a public rule-making process, thus subjecting any decision on the appropriate CPI to procedural safeguards. *See* DOL, Advisory Bulletins & Resource Guide 90, http://www.colorado.gov/cs/ Satellite/CDLE-LaborLaws/CDLE/ 1251569408907 (last visited April 18, 2011). Although their position was not accepted by the DOL, plaintiffs participated in the public rule-making proceedings at which the DBG–CPI was selected for the inflation adjustor. These safeguards are sufficient to insure against an "arbitrary or unbridled exercise of agency discretion in applying and enforcing the provisions" of the Amendment. *See Stamm*, 856 P.2d at 57 (citing *Electron Corp. v. Wuerz*, 820 P.2d 356 (Colo.App.1991)) (availability of administrative and judicial review sufficient to insure against arbitrary and capricious application of a standard).

Plaintiffs also assert that the Amendment's drafters should have specified which BLS-published index the DOL should utilize in its annual wage calculation. In support of their argument, they cite numerous states whose laws specify which CPI the enforcing agency should utilize in its annual minimum wage calculation. However, when reviewing a challenged provision, our duty is "to uphold [the provision's] constitutionality whenever a reasonable and practical construction may be applied." *Loonan v. Woodley*, 882 P.2d 1380, 1389 (Colo.1994) (quoting *People v. Buckallew*, 848 P.2d 904, 907 (Colo. 1993)). Just because a law *could* have been drafted with greater precision does not mean it is invalid. *See Wilder*, 960 P.2d at 703. Instead, because there is a reasonable and practical construction of the Amendment, we cannot find it void for vagueness simply be-

cause other states have identified a specific CPI.

Plaintiffs rely on *Connally v. General Construction Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322 (1926), to support their contention that the Amendment does not supply standards and thus "[persons] of common intelligence must necessarily guess as to its meaning and differ as to its application," rendering the Amendment void for vagueness. We conclude that reliance is misplaced.

In *Connally*, the Supreme Court held that Oklahoma's minimum wage law was unconstitutionally vague because the requirement that employers pay "current rate of per diem wages in the locality" was indefinable and therefore could not be understood by the public. The Oklahoma statute provided no specific sum for the minimum wage, and "[left] the question of what is meant [by the language] incapable of any definite answer." *Id.* at 394, 46 S.Ct. 126. Additionally, the Court found that the vagueness of the word "locality" would allow juries to indiscriminately determine which areas are, or are not, to be included within particular localities. *Id.* at 395, 46 S.Ct. 126.

However, here, unlike the contested language in *Connally*, the Amendment's text sets a specific base standard—$6.85—and then a general measure that the DOL should utilize in calculating the annual inflation adjustment. As noted above, this method is not incapable of producing a definite answer.

Moreover, the danger of arbitrary enforcement present in *Connally* is not present here. In *Connally*, the statute imposed a penalty upon employers who did not adhere to the law, thus exposing employers to potential prosecution or fine. Employers in Colorado, unlike the employers in Oklahoma, are not called upon to determine the annual adjustment to the minimum wage, and thus they are not in a position where they have to apply the language of the Amendment and risk penalties if they apply the language erroneously. Rather, the DOL is charged with interpreting the amendment and promulgating an annual minimum wage accordingly. Consequently, the risk of prosecution in the event of erroneous interpretation of

the Amendment is not present here because employers are not charged with that duty—the DOL is.

Plaintiffs have failed to show beyond a reasonable doubt that the Amendment is incomprehensible or impermissibly vague in all its applications, and therefore they have not demonstrated the Amendment is facially unconstitutional.

## IV. DOL's Authority to Utilize the DBG–CPI

Plaintiffs contend that the trial court erred in granting the motion to dismiss because the DOL exceeded its authority and acted in an arbitrary and capricious manner in applying the DBG–CPI in its annual minimum wage calculation. We disagree.

■■■ Rules promulgated by an agency are presumed to be valid, and plaintiffs bear the burden of demonstrating that a rulemaking body has exceeded its statutory authority. *Regular Route Common Carrier Conf. v. Pub. Utils. Comm'n*, 761 P.2d 737, 743 (Colo.1988). An agency's interpretation of its governing statutes and constitutional provisions is entitled to great deference, and a reviewing court may not substitute its judgment for that of the agency. *See Bd. of County Comm'rs v. Colo. Pub. Utils. Comm'n*, 157 P.3d 1083, 1088 (Colo.2007); *Wine & Spirits Wholesalers, Inc. v. Colo. Dep't of Revenue*, 919 P.2d 894, 897 (Colo. App.1996). Although we apply a de novo standard of review, we generally accept an agency's statutory interpretation if it has been charged with the statute's administration and the interpretation has a reasonable basis in the law, and is warranted by the record. *Nededog v. Colo. Dep't of Health Care Policy & Financing*, 98 P.3d 960, 962 (Colo.App.2004).

Under the state Administrative Procedure Act, a court may reverse an administrative decision only if the court finds that the "agency exceeded its constitutional or statutory authority, made an erroneous interpretation of law, acted in an arbitrary and capricious manner, or made a determination that is unsupported by the evidence in the record." *McClellan v. Meyer*, 900 P.2d 24, 29

(Colo.1995) (citing § 24–4–106(7), C.R.S. 2010).

■ Here, we conclude that the DOL did not exceed its authority or act arbitrarily or capriciously in utilizing the DBG–CPI in its annual minimum wage adjustment calculation. Plaintiffs suggest that Amendment 42 can only be read as requiring the minimum wage to be adjusted annually based on a nonexistent CPI. However, Amendment 42 mandates that the enforcing agency apply the CPI "used for Colorado," and section 8–6–108.5(3) delegates the determination of this adjustment to the DOL. The language of the Amendment can reasonably be interpreted as allowing the DOL to apply the DBG–CPI, a consistently utilized inflation index pervasive in Colorado law, as a CPI that is used "on behalf of" or "for" Colorado. *See Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 844, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) (even when a legislative delegation is implicit and not explicit, a "court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency"). Because agencies are given significant deference in statutory interpretation, *see Nededog*, 98 P.3d at 962, we cannot conclude the DOL acted arbitrarily or beyond its authority when its interpretation is reasonable in light of the Amendment's language.

Plaintiffs also contend that the DOL is not precluded from creating its own state-specific CPI to use in calculating the annual minimum wage adjustment. This may be a direction the DOL pursues in the future. However, we cannot substitute our own judgment for that of a state agency charged with wage law enforcement simply because plaintiffs suggest an alternative way of calculating the inflation rate. *See Freedom Colorado Information, Inc. v. El Paso County Sheriff's Dep't*, 196 P.3d 892, 900 (Colo.2008) ("The reviewing court should not substitute its judgment for that of the agency[ ] when the General Assembly by statute has consigned the matter to the exercise of the agency's sound discretion.").

Accordingly, based on Amendment 42's language, we do not conclude that the DOL exceeded its authority, acted in an arbitrary or capricious manner, or abused its discretion, in using the DBG–CPI as an inflation index in calculating the adjustment to Colorado's annual minimum wage.

The judgment dismissing plaintiffs' complaint is affirmed.

Judge HAWTHORNE and Judge ROMÁN concur.