The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader.  The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
June 12, 2025

**2025COA56**

**No. 24CA1085, *Colorado Education Association v. Colorado
State Board of Education* — Education — Licensed Personnel
Performance Evaluation Act — Performance Evaluation Ratings
for Teachers — Process for Nonprobationary Teacher to Appeal
Second Consecutive Performance Evaluation Rating of
Ineffective or Partially Ineffective**

A teachers' association appeals the district court's judgment

denying its petition for review of two rules governing the evaluation

of teacher performance adopted by the Colorado State Board of

Education (Board).  The challenged rules (1) established a "partially

effective" performance rating, defined as one of two ratings

demonstrating ineffectiveness; and (2) established the appeal

process for teachers who receive a second consecutive performance

rating demonstrating ineffectiveness, limiting the grounds upon

which a teacher can base such an appeal.  A division of the court of

appeals addresses the teachers' association's contention that the

Board's promulgation of the challenged rules exceeded its statutory authority. The division concludes that the Board didn't exceed its authority with respect to either rule. Accordingly, the division affirms the judgment of the district court.

COLORADO COURT OF APPEALS                                    **2025COA56**

Court of Appeals No. 24CA1085
City and County of Denver District Court No. 23CV32208
Honorable David H. Goldberg, Judge

Colorado Education Association,

Plaintiff-Appellant,

v.

Colorado State Board of Education,

Defendant-Appellee.

JUDGMENT AFFIRMED

Division V
Opinion by JUDGE WELLING
Grove and Johnson, JJ., concur

Announced June 12, 2025

Colorado Education Association, Rory M. Herington, Ethan Ice, Denver,
Colorado, for Plaintiff-Appellant

Phillip J. Weiser, Attorney General, Michelle Berge, First Assistant Attorney
General, Joseph Peters, Senior Assistant Attorney General, Denver, Colorado,
for Defendant-Appellee

¶ 1     The Colorado Education Association (CEA) appeals the district court's judgment denying its petition for review of two rules governing the evaluation of teacher performance adopted by the Colorado State Board of Education (Board).  Department of Education Rule 3.3, 1 Code Colo. Regs. 301-87 (Rule 3.3), establishes a performance standard of "partially effective" and defines it as one of two ratings that demonstrates ineffectiveness. Department of Education Rule 5.4, 1 Code Colo. Regs. 301-87 (Rule 5.4), establishes the appeal process for teachers who have received two consecutive ratings demonstrating ineffectiveness but limits the grounds upon which a teacher can base their appeal.  The CEA argues, as it did to the district court, that the Board exceeded its statutory authority by defining the "partially effective" performance standard as a second rating demonstrating ineffectiveness and by impermissibly restricting the grounds on which teachers may appeal a second consecutive rating demonstrating ineffectiveness. We, like the district court, disagree that the Board exceeded its authority.  We, therefore, affirm the judgment of the district court.

## I.     Background

¶ 2      In 2010, the General Assembly enacted Senate Bill 10-191, which significantly changed the way teachers are evaluated under the Licensed Personnel Performance Evaluation Act (the Act), §§ 22-9-101 to -109, C.R.S. 2024.  *See* Ch. 241, 2010 Colo. Sess. Laws 1053-75; *see also Johnson v. Sch. Dist. No. 1*, 2018 CO 17, ¶¶ 3-7 (discussing sweeping changes ushered in by Senate Bill 10-191). As part of the Act, the General Assembly established a performance evaluation system that would sort teacher performance into one of two categories — demonstrating effectiveness or demonstrating ineffectiveness.  § 22-63-103(7), C.R.S. 2024.  A teacher who demonstrates effectiveness for three consecutive years achieves nonprobationary status.  *Id.*  But if a teacher who has obtained nonprobationary status is given a rating that demonstrates ineffectiveness for two consecutive years, they lose their nonprobationary status and are returned to probationary status. *Id.*

¶ 3      This distinction between probationary and nonprobationary status is vitally important because, while a probationary teacher's contract can't be longer than one school year and can be denied

2

renewal for any reason, § 22-63-203(2)(a), (4)(a), C.R.S. 2024, a nonprobationary teacher may only be dismissed for "just cause," § 22-63-301, C.R.S. 2024. Simply put, nonprobationary teachers have far more robust job protections than probationary teachers. *See* § 22-63-202, C.R.S. 2024.

¶ 4　　The legislative scheme adopted in 2010 expressly created two performance standards demonstrating effectiveness — "highly effective" and "effective" — and one performance standard demonstrating ineffectiveness — "ineffective." § 22-9-105.5(3)(a), C.R.S. 2024. The statute, however, provides that the three prescribed performance standards don't constitute an exhaustive list and explicitly authorizes the Board — in consultation with a council of educators appointed by the governor — to create additional performance standards. *Id.*; *see also* § 22-9-105.5(1)-(2) (discussing the appointment and composition of the council of educators).

¶ 5　　The Act also instructed the Board to design and implement an appeal process for nonprobationary teachers who have received two consecutive ratings demonstrating ineffectiveness. §§ 22-9-105.5(3)(e)(VII), -106(4.5)(b), C.R.S. 2024.

3

¶ 6     The statutory scheme charged the Board with promulgating administrative rules through rulemaking.  §§ 22-9-103(2.5), -104(2)(f), -105.5(10)(a), C.R.S. 2024.  Following notice and comment, the Board adopted a comprehensive set of rules in February 2012.  With respect to performance standards, the Board adopted Rule 3.3, which defines the Act's three prescribed performance standards — "highly effective," "effective," and "ineffective" — as well as a fourth performance standard: "partially effective."  Dep't of Educ. Rule 3.3(B), 1 Code Colo. Regs. 301-87.  Rule 3.3(B) defined "partially effective" as a second performance rating — along with "ineffective" — demonstrating ineffectiveness. *Id.*

¶ 7     Regarding the appeals process for nonprobationary teachers who receive two consecutive performance ratings of "ineffective" or "partially ineffective," the Board adopted Rule 5.4.  Dep't of Educ. Rule 5.4, 1 Code Colo. Regs. 301-87.  In Rule 5.4, the Board limited the grounds upon which a teacher could appeal a rating demonstrating ineffectiveness to (1) the evaluator's failure to follow the proper evaluation procedures; and (2) the evaluator's reliance on data inaccurately attributed to the appealing teacher ("e.g., data

included in the evaluation was from students for whom the teacher was not responsible"). *Id.* at Rule 5.4(A)(7).

¶ 8 Before these two rules could go into effect, they had to survive a special legislative rule-review process separate from the annual rule review bill.[1] *See* § 22-9-105.5(10)(b). As part of this special rule-review process, the General Assembly expressly "reserve[d] the right to repeal individual rules contained in the rules promulgated by the [Board]." *Id.* Rules 3.3 and 5.4 survived this review process and became effective February 15, 2012. *See* Ch. 2, sec. 1, 2012 Colo. Sess. Laws 2-3.

¶ 9 In 2023, the Board proposed nonsubstantive changes to Rules 3.3 and 5.4, such as renumbering them for the sake of "clarity and consistency." Sec'y of State, *Code of Colorado Regulations eDocket: Details of Tracking No. 2023-00091*, https://perma.cc/MEA3-M88L.

---

[1] Section 24-4-103(8)(c), C.R.S. 2024, sets forth the annual rule review process to which all new and amended rules are subject. Section 24-4-103(8)(c)(I)(A) provides that "all rules adopted or amended during any one-year period that begins each November 1 and continues through the following October 31 expire at 11:59 p.m. on the May 15 that follows such one-year period unless the general assembly by bill acts to postpone the expiration of a specific rule." Surviving this process, however, "does not constitute legislative approval of the rule and is not admissible in any court as evidence of legislative intent." § 24-4-103(8)(c)(I)(C).

During the Board's 2023 rulemaking process, the CEA objected to Rules 3.3 and 5.4 and proposed substantive amendments to those rules. The Board didn't adopt any of the CEA's requested changes to Rules 3.3 or 5.4, and the updated rules went into effect on June 20, 2023, notwithstanding the CEA's objections. The CEA filed a suit in the district court challenging Rules 3.3 and 5.4 as being beyond the Board's statutory authority. *See* §§ 22-63-103, 22-9-106. In a thorough written order, after full briefing by the parties, the district court denied the CEA's petition for review, finding that the CEA hadn't met its burden to prove the two rules were invalid. This appeal follows.

## II. Issues on Appeal

¶ 10 The CEA argues that by adopting Rule 3.3, which established the "partially effective" performance standard and defined it as a rating demonstrating ineffectiveness, the Board exceeded its statutory authority because Rule 3.3 is contrary to the unambiguous language of section 22-63-103(7). The CEA also argues that by adopting Rule 5.4, which limits the grounds on which a teacher can appeal a second consecutive rating demonstrating ineffectiveness, the Board exceeded its statutory

authority because, by limiting the grounds for appeal, the rule violates the statutory requirement that the appeals process must provide a teacher with the opportunity to demonstrate that they deserved an effective rating. After discussing our standard of review, we address, and reject, each contention in turn below.

### A. Standard of Review and Legal Principles

¶ 11 This case presents issues of statutory interpretation. "Statutory interpretation is a question of law that we review de novo." *Larimer Cnty. Bd. of Equalization v. 1303 Frontage Holdings LLC*, 2023 CO 28, ¶ 29 (citing *McCoy v. People*, 2019 CO 44, ¶ 37). When construing a statute, "our primary task is to effectuate the legislative intent." *Id.* (citing *Colo. Prop. Tax Adm'r v. $CO_2$ Comm. Inc.*, 2023 CO 8, ¶ 22). In doing so, "we look to the entire statutory scheme in order to give consistent, harmonious, and sensible effect to all of its parts" and give "words and phrases . . . their plain and ordinary meanings." *Id.* (quoting *UMB Bank, N.A. v. Landmark Towers Ass'n*, 2017 CO 107, ¶ 22). "If the statutory language is clear and unambiguous — in other words, not susceptible to multiple interpretations — we look no further." *Id.* (quoting *$CO_2$*

*Comm.*, ¶ 22).  These principles of statutory interpretation also apply to administrative rules and regulations.  *Id.* at ¶ 30.

¶ 12     Any rule that conflicts with a statute is void.  § 24-4-103(8)(a), C.R.S. 2024.  The plaintiff — here, the CEA — has the burden of establishing that the agency has exceeded its statutory authority.  *Colo. Workers for Innovative & New Sols. v. Gherardini*, 2023 COA 80, ¶ 18.

¶ 13     Although we aren't required to do so, we may defer to an agency's interpretation of the statute it's charged with administering if its interpretation is reasonable.  *Larimer*, ¶ 30; *see also Table Servs., LTD v. Hickenlooper*, 257 P.3d 1210, 1217 (Colo. App. 2011) ("[W]e generally accept an agency's statutory interpretation if it has . . . a reasonable basis in the law, and is warranted by the record.").  But we won't defer if the agency's interpretation is contrary to the plain language of the statute.  *BP Am. Prod. Co. v. Colo. Dept. of Revenue*, 2016 CO 23, ¶ 16.

¶ 14     The CEA argues that the degree of deference we should accord the Board in interpreting its organic statute has been dramatically lowered — if not eliminated — by *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), which jettisoned what had been

known as the *Chevron* doctrine. Under that doctrine, courts applying the federal Administrative Procedures Act, 5 U.S.C. §§ 551 to 559, generally deferred to a federal agency's interpretation of its organic statute and rules. *See Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984), *overruled in part by Loper*, 603 U.S. 369. But we aren't persuaded that *Loper* has any bearing on the level of deference we should or may give to state agencies under Colorado law. We reach this conclusion for two reasons.

¶ 15 First, the Colorado Supreme Court has stated that our framework for according deference when reviewing state-agency rulemaking is different than *Chevron*'s. *See Nieto v. Clark's Mkt., Inc.*, 2021 CO 48, ¶ 38 ("True, we have, at times, appeared to embrace *Chevron*-style deference for the purposes of the Colorado Administrative Procedure Act. But in other cases, we have made clear that, while agency interpretations should be given due consideration, they are 'not binding on the court.'") (citations omitted).

¶ 16 Second, nothing in *Loper* calls into question the propriety or constitutionality of the longstanding framework of deference described in *Nieto* and its progeny, *see, e.g., Larimer*, ¶ 29, so we

must continue to adhere to that framework, *see, e.g., People v. Cox*, 2021 COA 68, ¶ 8 (noting that both this court and trial courts are bound by decisions of the Colorado Supreme Court).  Simply put, if *Loper* is going to have any bearing on the deference Colorado courts may accord Colorado agencies, that change will need to come from the Colorado Supreme Court.  *See People v. Novotny*, 2014 CO 18, ¶ 26 (The Colorado Supreme Court "alone can overrule [its] prior precedents concerning matters of state law.").  Accordingly, we reject the notion that *Loper* impacts the level of deference we accord the Board's interpretation of its own statute.

¶ 17     With these principles in mind, we turn to the merits of the CEA's challenges to Rules 3.3 and 5.4.

## B.     Rule 3.3

¶ 18     The CEA argues that the Board exceeded its statutory authority by defining the "partially effective" rating as a rating demonstrating ineffectiveness.  While the CEA concedes that the language in section 22-9-105.5(3)(a) — which permits the Board to "consider whether additional performance standards should be established" — authorizes the Board to promulgate additional performance standards, including a "partially effective" standard,

the CEA nevertheless contends that the Board exceeded its authority by designating its new "partially effective" standard as a standard of *ineffectiveness* that results, if received for two consecutive years, in the loss of nonprobationary status. The CEA contends this is so because the Act authorizes the Board to create only additional categories of *effectiveness*, not new categories of *ineffectiveness* that could lead to a loss of nonprobationary status. We disagree that the Act is so constrained.

¶ 19      When the General Assembly amended the statute to change how teachers are evaluated in 2010, it instructed the Board — in consultation with a special council of educators — to promulgate rules that would outline and govern this evaluation system. *See* § 22-9-105.5(10)(a). In doing so, it specifically defined "[p]robationary teacher" as "a teacher who has not completed three consecutive years of demonstrated effectiveness or a nonprobationary teacher who has had two consecutive years of demonstrated ineffectiveness, *as defined by rule adopted by the general assembly pursuant to section 22-9-105.5.*" § 22-63-103(7) (emphasis added). In turn, section 22-9-105.5(3)(a) provides:

> The quality standards for teachers shall be clear and relevant to the teacher's roles and responsibilities and shall have the goal of improving student academic growth. The council shall include in its recommendations a definition of effectiveness and its relation to quality standards. *The definition of effectiveness shall include, but need not be limited to, criteria that will be used to differentiate between performance standards.*

(Emphasis added.)

¶ 20    Nothing in section 22-9-105.5(3)(a) — or any other provision of the Act — requires that all new performance standards created by the Board be standards for rating a teacher's performance effective or provides that the statutorily prescribed "ineffective" performance standard must be the only standard for rating a teacher's performance ineffective. Nor does the Act prohibit the Board from creating a new performance standard that defines an alternative rating of ineffectiveness. Instead, the Act authorizes the Board to *both* establish new performance standards *and* define any new performance standard's rating as either demonstrating effectiveness or demonstrating ineffectiveness.

¶ 21    By adopting Rule 3.3, the Board established the "partially effective" performance standard and defined it as a rating that

demonstrates ineffectiveness, meaning two consecutive "partially effective" ratings would result in a loss of nonprobationary status:

> Implications for earning or losing nonprobationary status: A nonprobationary teacher who is rated partially effective or ineffective for two consecutive years loses nonprobationary status.

Dep't of Educ. Rule 3.3(B)(1), 1 Code Colo. Regs. 301-87.

¶ 22    The CEA argues that section 22-9-105.5(3)(a) "granted the Board [authority] to create other categories of effectiveness, but explicitly articulated, and thus limited, which categories would contribute to loss of nonprobationary status." That's simply not an accurate reading of section 22-9-105.5(3)(a). That subsection authorizes the Board — based on recommendations made by a council of educators — to create additional performance standards beyond the three designated without saying anything about whether any new performance standard could demonstrate ineffectiveness and, therefore, contribute to the loss of nonprobationary status. *See* § 22-9-105.5(3)(a) ("The defined performance standards shall include, but need not be limited to, 'highly effective', 'effective', and 'ineffective'. The council shall consider whether additional performance standards should be established."); *see also* § 22-63-

103(7) (defining "[p]robationary teacher" to include "a nonprobationary teacher who has had two consecutive years of demonstrated ineffectiveness, *as defined by rule adopted by the general assembly pursuant to section 22-9-105.5*") (emphasis added).

¶ 23     Could the Board have defined the performance standard of "partially effective" as a rating that demonstrates effectiveness? Certainly.  But nothing in the statute *requires* such a definition or *prohibits* the Board from defining an alternative performance standard that demonstrates ineffectiveness.  Instead, whether to do so is a policy decision that the General Assembly explicitly delegated to the Board.  And the Board's adoption of Rule 3.3 fell within the scope of that delegated authority.

¶ 24     In the event that there is any doubt whether the adoption of Rule 3.3 was a valid exercise of the Board's statutory authority, it's instructive that Rule 3.3, including the provisions related to the "partially effective" performance standard, survived the special rule-review process in 2012.  *See* § 22-9-105.5(10)(b); Ch. 2, sec 1, 2012 Colo. Sess. Laws 2.  Neither the Act nor Rule 3.3 has materially changed since this rule-review process was completed.

¶ 25    Notwithstanding the legislative history confirming the validity

of Rule 3.3, the CEA wants us to interpret the legislature's inaction

since 2012 as a tacit *disapproval* of Rule 3.3.  But, as the district

court aptly pointed out, parsing the meaning of legislative inaction

is a "risky" endeavor since the reasons for enacting, or not enacting,

legislation are "too numerous to tally."  *Welby Gardens v. Adams*

*Cnty. Bd. of Equalization*, 71 P.3d 992, 998 n.8 (Colo. 2003).

Regardless, there's no legislative inaction in this case.  The 2012

versions of the challenged rules were reviewed by the General

Assembly and weren't repealed.  *See* § 22-9-105.5(10)(b).  Because

the 2023 versions — the rules at issue in this appeal — haven't

substantively changed, we don't view the General Assembly's

subsequent silence as disapproval, tacit or otherwise.

¶ 26    Moreover, we agree with the district court that, if the General

Assembly's silence on the "partially effective" rating raises any

inference at all, that inference would be that Rule 3.3, including its

definition of "partially effective," is a valid exercise of the Board's

statutory authority.  After all, the Board promulgated Rule 3.3 over

a decade ago, so the General Assembly has had ample time and

opportunity to correct any perceived overreach by the Board.  *See*

§ 24-4-103(8)(d) (authorizing the office of legislative legal services to recommend rules or portions of rules that should be repealed by the General Assembly because they are beyond the agency's rulemaking authority).

¶ 27      Simply put, we conclude that the Board's promulgation of Rule 3.3 was a valid exercise of its statutory authority and that the rule's definition of "partially effective" as a rating demonstrating ineffectiveness isn't contrary to the plain and unambiguous language of the statute. Accordingly, the district court correctly denied the CEA's challenge to Rule 3.3.

## C.     Rule 5.4

¶ 28      The CEA next argues that the Board exceeded its statutory authority when it improperly limited the grounds for a teacher to appeal a second consecutive rating demonstrating ineffectiveness because the statute granting the Board the authority to design and implement the appeals process didn't include any such limitations. Again, we disagree.

¶ 29      The Act instructs the Board to develop a "process by which a nonprobationary teacher may appeal his or her second consecutive

16

performance rating of ineffective." § 22-9-105.5(3)(e)(VII). The Act

goes on to require the following with respect to an appeals process:

> Each school district shall ensure that a
> nonprobationary teacher who objects to a
> rating of ineffectiveness has an opportunity to
> appeal that rating, in accordance with a fair
> and transparent process developed, where
> applicable, through collective bargaining. At a
> minimum, the appeal process provided shall
> allow a nonprobationary teacher to appeal the
> rating of ineffectiveness to the superintendent
> of the school district and shall place the
> burden upon the nonprobationary teacher to
> demonstrate that a rating of effectiveness was
> appropriate.

§ 22-9-106(4.5)(b).

¶ 30    Rule 5.4 is the Board's answer to the General Assembly's

charge to develop an appeals process for teachers who have

received two consecutive ratings demonstrating ineffectiveness.

Rule 5.4 allows local school districts to develop their own appeals

process or follow the state's model process. Regardless of which

path a district follows, Rule 5.4 allows only two grounds for a

teacher to appeal a rating that demonstrates ineffectiveness: (1) the

evaluator failed to follow proper evaluation procedures, and (2) the

data the evaluator relied upon was for a different teacher. Dep't of

Educ. Rule 5.4(A)(7), 1 Code Colo. Regs. 301-87.

17

¶ 31    The CEA argues that by limiting the grounds to appeal a rating demonstrating ineffectiveness to the two grounds enumerated in Rule 5.4, the Board violated the legislature's requirement that the appeals process provide the teacher with an opportunity "to demonstrate that a rating of effectiveness was appropriate." § 22-9-106(4.5)(b).  We disagree for three reasons.[2]

¶ 32    First, the language the CEA relies on isn't directed at establishing minimum requirements for the appeals process. Instead, the statute is focused on ensuring that the teacher bears the burden of proving that a rating of effectiveness was appropriate: "At a minimum, the appeal process provided shall allow a nonprobationary teacher to appeal the rating of ineffectiveness to the superintendent of the school district and *shall place the burden upon the nonprobationary teacher to demonstrate that a rating of effectiveness was appropriate*." § 22-9-106(4.5)(b).  Thus, this isn't

---

[2] The CEA also argues that Rule 5.4 is ultra vires because (1) Rule 5.4 allows a teacher to lose their nonprobationary status as a result of receiving a "partially effective" rating, and (2) the General Assembly didn't explicitly approve of the appeals process in Rule 5.4 when it amended the governing statutes in 2023.  Because we have already rejected these arguments, *supra* Part II.B, we don't readdress them here.

an affirmative grant of a broad right for a teacher to be afforded an opportunity to demonstrate effectiveness on appeal. Instead, it describes the burden of proof the teacher must carry in any appeals process established by the Board.

¶ 33 Second, the requirements of the appeal process as set forth in section 22-9-106(4.5)(b) aren't numerous: (1) the process must be fair and transparent; (2) the teacher must be allowed to appeal to the superintendent; and (3) the burden must be placed on the teacher to prove that an effectiveness rating was appropriate. And the statute doesn't provide any specific means that a teacher must be afforded to demonstrate that a rating of effectiveness was appropriate.

¶ 34 In any event, the appeals process is more robust than what is set forth in Rule 5.4(A)(7). Rule 5.4 provides a number of procedural protections that discharge the statute's requirement that the Board establish a "fair and transparent" appeal process. § 22-9-106(4.5)(b). For example,

- Rule 5.4(A)(1) guarantees an opportunity to appeal a second consecutive rating demonstrating ineffectiveness;

- Rule 5.4(A)(2) requires that an appeals process be appropriate to the circumstances, fair and clearly communicated, and timely;

- Rule 5.4(A)(3) requires that the appeals process must be developed through collective bargaining, where appropriate;

- Rule 5.4(A)(8) requires that the appeal proceedings be confidential; and

- Rule 5.4(A)(11) allows for a "no score" option when a "superintendent determines that a rating of ineffective or partially effective was not accurate but there is not sufficient information to assign a rating of effective."

¶ 35 Section 22-9-106(4.5)(b) granted the Board broad discretion to craft an appeals process that was "fair and transparent." This list of protections, together with the limitations set forth in Rule 5.4(A)(7), demonstrates that the Board has acted within the scope of its delegated authority under statute.

¶ 36 Third, the Act clearly delegated the task of crafting an appeals process, and thus the grounds upon which an appeal could be made, to the Board. Because the legislature, in section 22-9-

106(4.5)(b), gave the Board a wide berth to develop an appeals process, the task of creating an appeals process amounted to a policy decision entrusted to Board. *See Barela v. Beye*, 916 P.2d 668, 677 (Colo. App. 1996). And, as the Board notes, "[w]hen an administrative agency adopts a rule based on a policy judgment, particularly within the expertise of the agency[,] . . . it can choose to 'reject any adverse submissions and adopt the proposed rule.'" *City of Aurora v. Pub. Utils. Comm'n*, 785 P.2d 1280, 1287 (Colo. 1990) (citations omitted).

¶ 37    Last, the CEA argues that Rule 5.4 exceeds the Board's statutory mandate because it empowers local school districts to develop their own appeals processes. But the CEA doesn't point to any language in a governing statute that prohibits the Board from allowing local school districts to do so. Indeed, the statute seems to explicitly authorize this delegation by providing that "*[e]ach school district shall* ensure that a nonprobationary teacher who objects to a rating of ineffectiveness has an opportunity to appeal that rating, in accordance with a fair and transparent process *developed, where applicable, through collective bargaining.*" § 22-9-106(4.5)(b) (emphasis added).

¶ 38    Based on the foregoing, we conclude that the CEA hasn't carried its burden of demonstrating that the Board exceeded its statutory authority in adopting Rule 5.4.  Accordingly, we affirm the district court's denial of the CEA's petition challenging Rule 5.4.

## III.    Disposition

¶ 39    We affirm the district court's judgment.

JUDGE GROVE and JUDGE JOHNSON concur.